PITMAN, J.
Lin this action brought under the Louisiana New Home Warranty Act, (“NHWA”), La. R.S. 9:3141, et seq., Plaintiffs, Louis A. Palmer and Keri Kay Shirley Palmer, appeal a ruling of the trial court granting the motion for summary judgment filed by Defendant John William Kamphuis and dismissing the Palmers’ action against him on the basis that he was not engaged in a “joint venture” and, thus, was not liable to them as “builder” of the home under the statute. The trial court also denied Plaintiffs’ cross-motion for partial summary judgment seeking a determination that Defendant was engaged in a “joint venture” with the seller and, for that reason, was a builder of the home. For *1250 the following reasons, the judgments of the trial court are affirmed.

FACTS

The home at issue in this case was built in Shreveport, Caddo Parish, by Vermillion Home Builders, LLC (“Vermillion”). Construction on the home began in 2007 while Vermillion was owned by Randolph Hines and Defendant. Hines and Defendant were also the owners of three other companies, Vermillion Painting and Construction (“VPC”), H & K Equipment, L.L.C. (“H & K”) and Redman Development, L.L.C. (“Redman”). The two men decided to alter their business arrangement; and, in 2007, they entered into a written agreement to divide the assets of the various business interests they shared.
In a document entitled “Stock and Business Interest Bill of Sale and Exchange Agreement” (“the Agreement”), dated July 26, 2007, Hines transferred his stock in VPC and H & K to Defendant, and Defendant | transferred all of his interest in Vermillion and Redman to Hines. Defendant also provided cash consideration to Hines of $150,000 and delivered a promissory note in the amount of $85,000 as part of the consideration for the transfer of the business interests. The Agreement contained a clause for future payments by Defendant to Hines in the amount of $150,000.
Paragraph 9(a) of the Agreement concerns- additional payment by Vermillion and Redman to Defendant for compensation for contractual and management services rendered or to be rendered by him. That paragraph provides that Vermillion agrees to pay Defendant an amount equal to 40 percent of its net income before taxes for the year 2007. The clause also states: “In the event that Vermillion Homebuild-ers has a loss for 2007, no payment shall be due, and Kamphuis shall not be required to make any payment as a result of such loss.”
Paragraph 12 of the agreement states as follows:
a. Kamphuis agrees to manage the jobs described in Exhibit B attached hereto, being current jobs in progress for Vermillion Homebuilders, until completion of such jobs, but such completion shall be at the sole expense of Vermillion Homebuilders. At the conclusion of each such job, Hines shall cause Vermillion Home-builders to pay Kamphuis compensation equal to 20% of the gross profit on the job in question, less any draw or draws made by Kamphuis on any such job prior to the date of this Bill of Sale. Such payments shall be due on or before 30 days following closing on each particular job, and Kam-phuis shall provide a calculation of each payment with the payment. In addition, VPC will provide office space, equipment and staffing services for Vermillion Homebuilders in accordance with rates agreed upon by the parties, or, in the absence of such agreement, at reasonable rates determined by an objective third party or a court of competent jurisdiction.
Paragraph 15 of the Agreement contains an indemnity clause entitled | ..“Indemnity of Kamphuis,” which states as follows:
Hines, Redman and Vermillion Home-builders, as solidary obligors, agree to indemnify and hold harmless Kamphuis from and against any and all claims, damages or causes of action of any nature whatsoever, arising out of the operation of Redman or Vermillion Home-builders, whether before or after the date of this Bill of Sale, except for any claim, damage or cause of action caused by any legal fault of Kamphuis. Such *1251 indemnity shall include and [sic] costs of defending any claim, including attorneys’ fees.
The house at issue in this case was one of the jobs referred to in Paragraph 12 and itemized on Exhibit B of the Agreement as Lot 120, Provenance Subdivision, Caddo Parish, Louisiana. Defendant did manage the job of building the house located on Lot 120 until its completion and also engaged in activities which resulted in the sale of the house to the Palmers.
The Palmers bought the house in March 2008. After taking possession, they began to notice numerous major structural defects in the home, allegedly caused by noncompliance with building standards or other defects in materials or workmanship in the construction of the home. These defects included movement between the foundation and adjacent structures, vertical cracks in the exterior finishes, cracks in the slab of the foundation and cracks in the drywall in the interior of the home.
The Palmers filed suit against Vermillion, Hines and Defendant, alleging defects in load-bearing portions of the house resulting in the home becoming unsafe, unsanitary or otherwise unlivable. They claimed that, under the NHWA, they were the “owners” of the home and the defendants were the “builders” against whom they have a cause of action in warranty. The Palmers alleged that Defendant was to manage the jobs described in the | ¿Agreement between Vermillion, Hines and Defendant until completion of the jobs, including their home. The Palmers also alleged that the Agreement constituted a joint venture between Vermillion, Hines and Defendant for the construction of the home sold to them, making Defendant a “builder” of the home as the joint venturer with Vermillion.
Defendant filed an answer to the petition denying any claim of solidary liability and admitting only that he agreed to provide certain services in exchange for compensation for those services. Defendant also filed a cross-claim against Vermillion and Hines, alleging that, pursuant to the Agreement, Hines and Vermillion had agreed to indemnify and hold him harmless against any and all claims, damages or causes of action arising out of the operation of Vermillion, including the cost of defense of any claim and reasonable attorney fees.
Defendant also filed a motion for summary judgment seeking dismissal from the suit on grounds that he was not engaged in a joint venture with Vermillion and was in no way personally liable to the Palmers. He claimed summary judgment was appropriate because he and the Palmers had no express agreement between them, he did not own the land on which the house was built and he did not perform any services in connection with the construction of the house or with the design or construction of its foundation. He also claimed that the construction supervisor of the Palmers’ home was an employee of Vermillion and that, prior to the sale of the home to the Palmers, Defendant had exchanged all of his interest in Vermillion for all of Hines’ interest in VPC. He further claimed that, from that point forward, he no longer owned any interest in Vermillion.
| .^Defendant’s motion for summary judgment also alleged that the Agreement expressly provided that he would not share in any losses of Vermillion for the year of the closing of the Agreement and that he would be indemnified by Vermillion and Hines and held harmless from any claims or liabilities. Last, he claimed that the sale of the house to the Palmers closed on March 31, 2008, and that he had no interest in Vermillion at the time of the sale. Based on these facts, Defendant sought dismissal from the Palmers’ suit against him.
*1252 The Palmers filed a cross-motion for summary judgment and claimed that, under the Agreement between Defendant, Hines and Vermillion, no genuine issues of material fact remained and that the Agreement provided that Defendant receive consideration for the division of ownership interests and was to “manage the jobs described in Exhibit B.” Further, they claimed that Defendant acted as manager of the project for construction of the home pursuant to the terms of the Agreement and assumed responsibility for the sale of the home. They allege that Defendant participated in negotiations with them on behalf of Vermillion for the purchase of the home and that he received compensation in the form of a commission for the sale, all pursuant to the terms of the Agreement. The Palmers also assert that Defendant responded to their calls concerning warranties covering the home under the NHWA. For these reasons, they sought summary judgment in their favor declaring Defendant and Vermillion to be considered a joint venture for all purposes of this lawsuit and that Defendant be considered a “builder” under the NHWA.
Following a hearing at which both motions for summary judgment | fiwere argued, the trial court granted Defendant’s motion, finding that, under the Agreement, Defendant was not “at risk of loss”; therefore, there was no joint venture. The trial court denied the Palmers’ motion for summary judgment.
The Palmers filed a motion for new trial, claiming to have found new evidence showing that Defendant would have been at risk of loss because he had cosigned a mortgage with Vermillion when the lot upon which their home was built was purchased. However, the trial court denied the motion for new trial.
The Palmers have appealed the judgment granting Defendant’s motion for summary judgment and the judgment denying their cross-motion.

DISCUSSION

The issue presented in this appeal is whether the trial court erred in finding that Defendant was not engaged in a joint venture with Vermillion as a builder of the home under the NHWA, and, thus, whether summary judgment in his favor, and against the Palmers, was proper.
The Palmers argue that the trial court erred in granting Defendant’s motion for summary judgment and in denying theirs because, by the express definition of “builder” in La. R.S. 9:3143(1) of the NHWA, Defendant is personally liable in warranty to them as “owners” by virtue of his being an individual “joint venturer” with Vermillion. The Palmers claim that the remedies available to the homeowner, when it involves the construction of a new home, are in warranty against the “builder,” and those remedies are the exclusive remedies available to the homeowner for defects in a new home under the NHWA.
|7The Palmers rely on the Agreement entered into between Vermillion, Hines and Defendant as proof that the relationship between those parties is one of joint venture with regard to the Palmers’ house. They claim that, pursuant to Defendant’s duties to manage completion of the home and the corresponding benefits described in the Agreement, Defendant established himself as a joint venturer with Vermillion. The Palmers claim that all of Defendant’s assertions of fact claiming the lack of personal and actual participation in the construction of the home are not material facts that would have any bearing on the validity of either motion for summary judgment if Defendant is, in fact, defined as a builder of the home. They claim that they are not attempting to argue that Defendant is personally liable to them for any *1253 defects in their home beyond the warranty owed to them by Defendant as a “builder” as defined in the NHWA. They argue that whether Defendant is a joint venturer and a “builder” under the NHWA is the only material fact relevant to the inquiry.
Defendant argues that the trial court correctly rejected the theory that he had a “joint venture” with Vermillion with regard to the Palmers’ home because there was no sharing of losses or agreement to share losses between Vermillion and himself. Rather, he claims the Agreement required Vermillion to bear all expenses and losses. Defendant also argues that the Agreement between Hines and himself specifically negates any theory that they were engaged in a joint venture with respect to the Palmers’ house. He asserts that the Agreement dictates that he be compensated for the work he did managing the job, not as a joint venturer, but, instead, as any other third person who participated in the building of the home and expected to be ^compensated for work performed.
He further argues there is no basis for personal liability for his individual acts since he did not install, participate in or supervise the installing of the foundation, or have anything whatsoever to do with its installation, design or construction.
Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except those disallowed by La. C.C.P. art. 969. The procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B)(2). The burden of proof remains with the mov-ant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action or defense, but, rather, to point out to the court -that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2); Schroeder v. Board of Sup’rs of La. State Univ., 591 So.2d 342 (La.1991); Mahoney v. East Carroll Parish Police Jury, 47,494 (La.App.2d Cir.9/26/12), 105 So.3d 144, writ denied, 12-2684 |9(La.2/18/13), 108 So.3d 88.
We review the grant of a motion for summary judgment de novo. Schroeder, supra; Dowdy v. City of Monroe, 46,693 (La.App.2d Cir.11/2/11), 78 So.3d 791. A fact is material it if potentially insures or precludes recovery, affects a litigant’s ultimate success or determines the outcome of the legal dispute. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. King v. Illinois Nat. Ins. Co., 08-1491 (La.4/3/09), 9 So.3d 780.
With respect to issues of law, the court is required to determine whether the trial court applied the law appropriately. Appellate review of questions of law is to discern whether the district court’s interpretative decision is legally correct. See Forum for Equality PAC v. McKeithen, 04-2477 (La.1/19/05), 893 So.2d 715.
*1254 La. R.S. 9:3143, defining terms found in the NHWA, states in pertinent part as follows:
For purposes of this Chapter the following words, phrases, and terms shall be defined and construed as follows:
(1) “Builder” means any person, corporation, partnership, limited liability company, joint venture, or other entity which constructs a home, or addition thereto, including a home occupied initially by its builder as his residence. A person, corporation, partnership, limited liability company, joint venture, or other entity which constructs a home, or any addition thereto, is a “builder”, whether or not the consumer purchased the underlying real estate with the home.
A joint venture results from the undertaking by two or more persons to combine their efforts, knowledge, property or labor to engage in and carry |inout a single business venture for joint profit. A joint venture is analogous to a partnership and controlled largely by the rules applicable to partnerships. There must be a sharing of the profits and losses with each party having some right of control over the business. The existence or nonexistence of a joint venture is a question of fact and each case must be considered according to its circumstances. Riddle v. Simmons, 589 So.2d 89 (La.App. 2d Cir.1991), unit denied, 592 So.2d 1316 (La.1992).
The principal difference between a partnership and a joint venture is that, while a partnership is ordinarily formed for the transaction of a general business of a particular kind, a joint venture is usually, but not necessarily, limited to a single transaction, although the business of conducting it to a successful termination may continue for a number of years. No formal or specific agreement is required. Generally the relationship may be formed by an oral agreement and the existence of a joint venture may be inferred from the conduct of the parties and other circumstances. Riddle, supra.
The existence or nonexistence of a joint venture is a question of fact, although what constitutes a joint venture is a question of law. There are no hard and fast legal rules fixing the requisites for a joint venture; each case must be considered sui generis, and care must be exercised that consideration is given to the usages and practices characteristic of the particular commercial undertaking sought to be labeled a “joint venture.” Cajun Elec. Power Co-op., Inc. v. McNamara, 452 So.2d 212 (La.App. 1st Cir.1984), writ denied, 458 So.2d 123 (La.1984).
For a business arrangement to be considered a joint venture, the Inparties to the venture must share in profits and losses. According to the Agreement between Hines and Defendant, the Palmers’ house was being built by Vermillion “at the sole expense of Vermillion Homebuilders.” Defendant merely agreed to manage the job to completion in return for compensation. The fact that he did not share in the losses, if any, indicates that the parties themselves did not believe the construction of the house was a joint venture.
Further, by the time the Palmers purchased the house from Vermillion, Defendant no longer owned any interest in that business, since he conveyed all of his interest to Hines in the year prior to the sale of the house. Were the facts interpreted as the Palmers suggest and Defendant found to be a “joint venturer” and builder under the NHWA, he would have personal liability as a “joint venture” separate and apart from, and in addition to, that of the true builder of the home, Vermillion. The Agreement did not create another entity for the Palmers to sue as builder of their home, and no extra liability can be attributed to Defendant simply because he is no longer a member of Vermillion. We find *1255 that the facts, taken as a whole, do not create a commercial undertaking which could be defined as a joint venture. Therefore, following a de novo review of the record in this case, we conclude that the trial court correctly found that no joint venture existed between Defendant and Vermillion in the construction of the Palm-ers’ home, and Defendant is not a “builder” under the definition found in the NHWA. Accordingly, the Plaintiffs’ assignment of error is without merit.

CONCLUSION

For the foregoing reasons, the judgment of the trial court finding that |^no joint venture existed between Defendants, Vermillion Homes, Randolph Hines and John William Kamphuis, is affirmed. Further, the trial court’s judgment granting the motion for summary judgment in favor of Defendant, John William Kamphuis, and against Plaintiffs, Louis A. Palmer and Keri Kay Shirley Palmer, is affirmed. Costs of this appeal are assessed to Plaintiffs, Louis A. Palmer and Keri Kay Shirley Palmer.
AFFIRMED.