MOORE, J.
liU.L. Coleman III (“Coleman”) and other plaintiffs appeal a judgment that sustained peremptory exceptions of no cause of action, no right of action and prescription and dismissed virtually all claims against the defendants, Querbes Company No. 1 (“Querbes # 1”) and its constituent partners (“the Querbes parties”). For the reasons expressed, we affirm.

Factual Background

The Querbes parties owned a 21.6-acre tract of land in southeast Shreveport, to the east of Youree Drive and north of East 70th Street. Coleman is a realtor and land developer. In 1985 and 1986, they discussed plans to develop the tract, beginning with the 6.7-acre northern portion of the tract. The Querbes parties formed a partnership, Querbes # 1, to effectuate the project. On April 30, 1986, they executed *669 four contracts. The first three pertained to the 6.7-acre tract, which was to be developed as One Bellemead Centre, 6425 Your-ee Drive:
Articles of Partnership. Coleman and Querbes # 1 formed a partnership called Querbes-Coleman No. 1 (later converted to an LLC, and referred to herein as “Querbes-Coleman”). The purpose was to develop One Bellemead Centre. Coleman’s interest was 25% and he was designated managing partner; Querbes # l’s interest was 75%.
Development Agreement. Querbes # 1, as owner, contracted with one of Coleman’s business entities, U.L. Coleman Company Ltd. (“ULCC”), as manager, to manage, control, supervise, etc., the building that became One Bellemead Centre. The Development Agreement was to terminate “on the later of the substantial completion of construction or upon completion and occupancy of 90% of the rentable area of the building.”
^Management Agreement. Querbes-Coleman—the partnership formed that day—hired another of Coleman’s business entities, U.L. Coleman Properties Ltd. (“ULCP”), as agent, to be the exclusive manager for the operation, management and leasing of Qne Bellemead Centre. ULCP was to receive 5% of monthly gross receipts from the operation of the property.
The fourth contract pertained to the 14.9-acre tract adjacent to One Bellemead Centre, also owned by Querbes # 1. It is labeled simply:
Agreement. Noting its need for “technical assistance,” Querbes # 1 agreed with Coleman to enter “such agreements as may be necessary” to develop the adjacent tract, which “may include a joint venture of partnership * * *, development agreement, management agreement, and property management agreement.” If Querbes # 1 elected to develop the adjacent tract, it would form a partnership, joint venture or corporation with Coleman; if not, and Querbes # 1 decided simply to sell .the adjacent tract, then Coleman would be paid a real estate commission in an amount to be agreed on at the time of the sale.
The crucial issue in this appeal is Coleman’s contention that the Agreement created a joint venture with respect to the adjacent tract, and the defendants’ contention that it did not.
As a result of these four contracts, One Bellemead Centre was owned 25% by Coleman and 75% by Querbes # 1. Construction began on the five-story brick- and-glass modern-style suburban office building in late 1986 and was completed in 1987, effectively terminating the Development Agreement. As stated in the three documents, Coleman served as managing | ¡¡partner; his company, ULCP, served as property manager. Coleman arranged an $8.6 million loan from First National Bank to finance the project. Apparently, the operation of One Bellemead Centre went smoothly until the mid-1990s, when its principal tenant, IBM, downsized, drastically reducing the building’s occupancy. By 1998, rent was no longer sufficient to service the debt.
According to Coleman, the defendants embarked on an intricate course of “secret” conduct to oust him from the enterprise:
• In November 1998, the partners of Querbes # 1 formed a new company, Querbes Company No. 2 LLC (“Querbes # 2”) and transferred the adjacent tract to Querbes #2, for no consideration. Coleman felt this was a bald attempt to shut him out of the future development of the adjacent tract, even though he believed that under the contracts he was entitled to a 25% interest.
*670 • Days later, the partners of Querbes # 1 attempted to refinance the debt, paying off the loan to First National and borrowing $4.6 million from GECC. George Nelson, one of Querbes # l’s managing partners (also president of First National’s successor bank, Bank One), advised GECC that Querbes # 1 intended to terminate Coleman as managing partner of Querbes-Coleman, remove ULCP as property manager, and install its own managers, Nelson and Ms. Joseph, as managers of the property. GECC, however, replied that it would not honor its loan commitment if these changes were made. At this time, Querbes-Coleman converted to an LLC and executed an Operating Agreement that retained the same ownership ratio as before and retained Coleman as the managing member. In late November, GECC [¿refinanced, specifying that Coleman would remain on as managing partner and ULCP as property manager.
• In April 2004, Querbes # 2 sold part of the adjacent tract, paying $46,430 to a company owned by Nelson. Coleman later uncovered a string of emails showing that the buyer was concerned that Coleman would exercise his rights under the Operating Agreement and thus “hamper” the development of the property, but Nelson replied that they were trying to “get rid of’ Coleman.
• In May 2008, the Querbes parties made a cash call of $4 million to pay off the debt to GECC. Their stated purpose was to make One Bellemead Centre debt-free and to perform maintenance work; however, Coleman felt the ulterior motive was to force him to sell his 25% interest in Querbes-Coleman and thereby oust ULCP from the Management Agreement.
Nevertheless, Coleman was able to meet the capital call; he retained his 25% interest. Querbes-Coleman paid off the GECC loan. Querbes # 1, using its 75% interest in Querbes-Coleman, terminated the latter’s Management Agreement with ULCP on May 28, 2008.

Procedural History

Coleman, ULCP and Querbes-Coleman filed this suit for injunctive relief and damages in July 2008. Defendants were Querbes # 1 and the Querbes parties. Discovery and incidental actions proceeded over the next 6½ years (consuming over 3,200 pages of transcript).
By reconventional demand, filed in February 2014, the defendants alleged various reasons for wanting Coleman and ULCP out of the project, such as using a business in which he held a financial interest, Sequoia | ^Construction Co., to perform maintenance on One Bellemead Centre, resulting in a double payment; they also joined Sequoia as a defendant in reconvention.
A fourth supplemental and amending petition, filed in July 2015, identified 11 separate causes of action (called “counts”):
1. Breach of fiduciary duties owed to Querbes-Coleman and to Coleman;
2. Gross negligence and malfeasance to Querbes-Coleman and the other plaintiffs;
3. Breach and bad-faith breach of the joint venture agreement;
4. Breach and bad-faith breach of the Operating Agreement;
5. Breach and bad-faith breach of the Development Agreement;
6. Detrimental reliance by Coleman and ULCP;
7. Breach of the Management Agreement and prospective management agreement;
8. Fraud and conspiracy to commit fraud in breaching the Operating Agreement and Management Agreement;
*671 9. Intentional tortious interference with the Management Agreement;
10. Unfair trade practices; and
11. Alternative demand to pierce the corporate veils of Querbes # 1 and Querbes # 2.
The defendants filed numerous exceptions to the original and each supplemental and amending petition. As applied to the fourth supplemental and amending petition, these specified:
• No cause of action, as to Counts 1-10;
• No right of action, as to Counts 1-5 and 7-10;
• Prescription or peremption as to all counts.
A hearing on the exceptions was held over four days between September 21 and October 23, 2015. The parties stipulated that any judgment rendered against Querbes # 1 would be enforced against the partnership before the partners, and that Querbes-Colemaris claims were derivative. They also stipulated that the exception of prescription would be sustained as to conduct occurring before July 3, 2007, and withdrawn as to ^conduct after that date on Counts 1 and 2; a similar cutoff date of July 3, 1998, applied to Count 4; a similar cutoff date of July 3, 2006, applied to Counts 8 and 9; and the exception of prescription was withdrawn as to Count 10. The parties introduced some 180 exhibits and called, over three days’ time, three witnesses. George Nelson, the lead partner in Querbes # 1, and U.L. Coleman, the lead plaintiff, recounted the events surrounding the formation of Querbes-Cole-man, their respective understandings of the nature of their agreement, and the long business relationship that followed. William Comegys III, the attorney who drafted the 1986 contracts, also testified, concerning his understanding of the agreement. After the parties rested and gave extensive arguments on the merits, counsel for Coleman objected that no evidence was admissible “for no cause or no right of action.”
After taking the matter under advisement, the court orally ruled that there was no joint venture agreement, as all the contracts referred to “the potential for a future joint venture.” Only one relationship was actually formed, for One Bellemead Centre, and Coleman may have had a claim for commissions or special services, but these were “clearly prescribed.” The court later issued a 30-page written findings of fact and conclusions of law, and rendered judgment sustaining the exceptions of no cause of action as to Counts 1, 3, 5, 6, 7, 8 and 9; no right of action with respect to Coleman’s individual claims, as to Counts 1, 2, 4 and 8; prescription as to Counts 1, 2, 4, 5, 6, 7 and 10; and no cause or right of action with respect to the claims against the Querbes parties individually, as to Counts 2,4, 5, 7 and 8.[1]
|vThe plaintiffs have appealed, designating four assignments of error.

Assignment No. 1: No Cause of Action

By their first assignment of error, the plaintiffs urge the district court erred in sustaining the exceptions of no cause of action with respect to Counts 1, 3, 5, 7, 8 and 9.[2] As a prefatory matter, they argue the standard of review is de novo, as the exception raises only a question of law, and the trial court’s decision should be based only on the sufficiency of the petition. Ba- *672 deaux v. Southwest Computer Bureau Inc., 2005-0612 (La. 3/17/06), 929 So.2d 1211. The fact that the court received evidence at the hearing did not convert the matter into a “mini-trial,” Villareal v. 6494 Homes LLC, 48,302 (La.App. 2 Cir. 8/7/13), 121 So.3d 1246.
The defendants respond that the standard of review is manifest error, as the parties voluntarily submitted evidence and thus expanded the scope of the pleadings, Jordan v. Sweeney, 467 So.2d 569 (La. App. 1 Cir.), writ denied, 469 So.2d 985 (1985). Because both sides presented evidence on the exception of no cause of action without objection, “both sides have consented to the consideration thereof.” Boykin v. Foster, 493 So.2d 731 (La. App. 2 Cir. 1986).
This court is fully cognizant of the general rule that the exception of no cause tests only the legal sufficiency of the petition and should be denied unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. Industrial Cos. Inc. v. Durbin, 2002-0665 (La. 1/28/03), 837 So.2d 1207; Hall v. James, 43,263 (La.App. 2 Cir. 6/4/08), 986 So.2d 817. However, we also adhere to the well-settled exception whereby a court may consider evidence admitted without objection to enlarge the pleadings. Maw Enters. LLC v. City of Marksville, 2014-0090 (La. 9/3/14), 149 So.3d 210; Rogers v. Ash Grove Cement Co., 34,934 (La.App. 2 Cir. 11/2/01), 799 So.2d 841, writ denied, 2001-3187 (La. 2/8/02), 808 So.2d 351 (collecting cases).
Plaintiffs’ counsel began the hearing by urging the district court to “listen to the evidence * * * one by one,” referring to the three witnesses and “probably 150 exhibits to go through.” Only after three days of testimony and documentary evidence did counsel suggest to the court that many of the things “raised here are summary judgment issues and are not issue for no cause of action[.]” Nevertheless, the plaintiffs briefed the merits, submitting proposed findings of fact as to each cause of action. In these circumstances, it is disingenuous for the plaintiffs to contend the district court could not consider the mountain of evidence introduced over three days’ time. The thrust of the exceptions was that the parties never had an agreement to develop the adjacent tract, only an agreement (stated in the Agreement) to “enter such agreements as may be necessary” to do so. The defendants contended that no such future agreement ever was reached, and over the course of three days the parties offered a prodigious amount of evidence to prove or disprove this fact. On this record, the district court was fully entitled to consider the evidence introduced. We will review its findings under the manifest error standard.
Count 3: The plaintiffs contend that they stated a cause of action for breach of “the joint venture agreement” between Coleman and Querbes # 1 to 1 ¡¡develop the entire 21.6-acre tract. They concede that the partnership they formed, Querbes-Coleman, had the stated purpose to develop only the first 6.7 acres, which later became One Bellemead Centre. They argue that the other contract they executed, the Development Agreement, applied to the remaining 14.9 acres: if the parties agreed , to develop this tract, they would follow the same formula that governed One Bellemead Centre, form another joint venture, divide ownership and risk 75/25, and award all contracts for development, construction and management to ULCC. Because the overall structure of the Articles of Partnership and the Agreement contemplated the formation of “another joint venture” for the specific purpose of developing the adjacent tract, the plaintiffs contend that some set of facts may exist to prove *673 “another joint venture.” Finally, they contend that even though their proposed joint venture pertained to developing real property, it was not a transfer of real property and thus was not subject to La. C.C. Art. 1839’s requirement of a writing. Grand Isle Campsites Inc. v. Cheek, 262 La. 5, 262 So.2d 350 (1972).
A joint venture is a juridical person created by an agreement between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit. Scheffler v. Adams & Reese LLP, 2006-1774 (La. 2/22/07), 950 So.2d 641; Palmer v. Vermillion Home Bldrs. LLC, 48,838 (La.App. 2 Cir. 2/26/14), 134 So.3d 1248, writ denied, 2014-0946 (La. 8/25/14), 147 So.3d 1119. The principal difference between a partnership and a joint venture is that a partnership is ordinarily formed for the transaction of a general business of a given kind, while a joint venture is Unusually (but not necessarily) limited to a single transaction, although the business of conducting it to a successful conclusion may take many years. Palmer v. Vermillion Home Bldrs., supra; Riddle v. Simmons, 589 So.2d 89 (La. App. 2 Cir. 1991), writ denied, 592 So.2d 1316 (1992). A joint venture may be formed by an oral agreement, and the existence of a joint venture may be inferred from the conduct of the parties and other circumstances. Id.
This large record fully supports the district court’s conclusion that the parties never entered any joint venture to develop the adjacent tract. A plain reading of the Articles of Partnership, Development Agreement and Management Agreement shows that this venture applied only to the 6.7-acre tract that became One Belle-mead Centre. The Agreement, executed the same day, addressed development of the adjacent tract, but specifically referred to “such agreements as may be necessary” and that “may include a joint venture of partnership.” In short, it plainly contemplated a prospective or future joint venture. The parties never executed, in furtherance of the adjacent tract,, any documents equivalent to the April 1986 agreements. In short, there is.no written proof of the alleged joint venture.
A joint venture may also be formed by oral agreement, but the plaintiffs’ own allegations effectively negate even the remotest prospect that these parties ever entered a joint venture to develop the adjacent tract. For instance, starting in 1998, the defendants formed a new company, Querbes # 2, to develop the adjacent tract; they tried to oust Coleman from management when they sought refinancing; they later sold the adjacent property, and still later issued a capital call in an effort to make Coleman divest. It is unclear how any of this evidence would support a claim that |ndefendants entered a joint venture with the plaintiffs to develop the adjacent tract. The witnesses’ testimony only strengthens this fact: Coieman and Nelson both described a business relationship that deteriorated into animosity. In short, there was no written or oral evidence that would support Count 3. The district court did not err . in sustaining the exception.
Count 1: The plaintiffs contend that all defendants owed Coleman a fiduciary duty and breached it when they replaced him as managing member of Querbes-Coleman in 2008. The district court found that as managing member of. ■Querbes-Coleman, Querbes #1 was owed a fiduciary duty under La. R.S. 12:1314 A(l), not Colenian himself. The plaintiffs urge that there a,re other sources, including the “ongoing joint venture” and the Articles of Partnership.
For the reasons already discussed, there was no “ongoing joint venture” • between the parties other than agreements execut *674 ed in 1986 and the Operating Agreement executed in 1998. The district court did not err in finding that a nonexistent “joint venture” imposed no fiduciary duty.
Moreover, the Operating Agreement converted Querbes-Coleman into an LLC. By this document, the parties superseded the earlier Partnership Agreement. While the Operating Agreement specifically continued “capital accounts, distributions, and allocations of profits and losses[,]” it was silent as to the creation of any fiduciary duties. Presumably, the parties intended only those fiduciary duties of members and managers described in R.S. 12:1314. The Operating Agreement is simply not a source of any additional fiduciary duty. The district court did not err in sustaining the exception.
_J¿¿Count 5: The plaintiffs contend that the defendants breached the Development Agreement by deliberately making it impossible to perform, a violation of good faith, La. C.C. Arts. 1759 and 1983. They cite Querbes # l’s conduct in transferring the adjacent tract to Querbes # 2 as foreclosing Coleman’s right to develop that tract. They characterize this as an “absolute, active breach,” 6 Litvinoff, Obligations § 1.12 (West 1999); Auto-Lec Stores v. B. & B. Sys., 162 So. 231 (La. App. 2 Cir. 1935). They submit the court was factually and legally wrong to find the Development Agreement gave Querbes # 1, and not Coleman, the exclusive right to determine whether to develop or sell the adjacent tract. They also argue that the question is one for the jury, not for decision by exception of no cause of action.
The Development Agreement states that “[i]n the event Querbes elects not to develop either all or part of the property, but instead elects to sell a particular tract or all of the property to an unrelated third party,” then Coleman would be paid a real estate commission to be fixed “at the time Querbes elects to make the sale.” It also says that the parties expressly understood and agreed that Querbes could receive offers concerning the property “to which Coleman has contributed nothing either in terms of value or availability of those offers.” In short, the Development Agreement granted Querbes # 1 the exclusive authority to develop or sell any part of the property, and it did so. There is no conceivable set of facts that would show a breach of this fairly straightforward agreement. The district court did not err in sustaining the exception.
Count 7: The plaintiffs contend that ULCP and ULCC are third-party beneficiaries of the Development Agreement and thus have a cause of | ^action. They again dispute the court’s conclusion that there was no joint venture with respect to the adjacent tract, and argue that they stated a claim for third-party rights under La. C.C. Arts. 1978 and 1981.
The Development Agreement designated ULCC as manager of One Bellemead Cen-tre. However, for the reasons already discussed, the Agreement did not create any joint venture with respect to the adjacent tract. Without any source of an obligation to which ULCP and ULCC would be third-party beneficiaries, there is no conceivable set of facts under which they would have a claim. The district court did not err in sustaining the exception.
Count 9: The plaintiffs contend they stated a cause of action against Nelson and Ms. Joseph, individually, for fraudulent interference with the Management Agreement. Specifically, they challenge the district court’s finding that under 9 to 5 Fashions Inc. v. Spurney, 538 So.2d 228 (La. 1989), a claim for fraudulent interference is allowed “only against an officer of a corporation.” They concede that this cause of action is narrow, but *675 argue that Spwmey’s holding is limited to corporations and must be deemed superseded by the 1992 enactment of Louisiana’s Limited Liability Company law, La. R.S. 12:1301, et seq. In the plaintiffs’ view, courts have applied Spwmey to “analogous situations,” such as Yarbrough v. Federal Land Bank Ass’n of Jackson, 616 So.2d 1327 (La. App. 2 Cir. 1993), and one court has expanded the concept “corporate officer” to include “chief technology officer,” Active Solutions LLC v. Dell Inc., 2010-1590 (La.App. 4 Cir. 7/21/11), 73 So.3d 934.
|14An officer of a corporation owes an obligation to a third person having a contractual relationship with the corporation to refrain from acts intentionally causing the corporation to breach the contract or to make performance more burdensome, difficult or impossible or of less value to the one entitled to the performance, unless the officer has reasonable justification for his conduct. 9 to 5 Fashions v. Spurney, supra at 231. The cause of action is “narrowly defined” for the breach of a duty by a corporate officer. Dhaliwal v. Dhaliwal, 49,973 (La.App. 2 Cir. 11/25/15), 184 So.3d 773, writ denied, 2016-0236 (La. 4/4/16), 190 So.3d 1204; Lynn v. Berg Mechanical Inc., 582 So.2d 902 (La. App. 2 Cir. 1991).
The plaintiffs have not alleged, and the record does not show, that Nelson or Ms. Joseph was a corporate officer of Querbes-Coleman; in fact, as a partnership (later an LLC), this entity did not have any corporate officers. Given the extremely narrow scope of the tort of intentional interference, this court is unwilling to extend it beyond the boundaries traced in Spwmey. We are constrained to observe that in Yarbrough v. Federal Land Bank Ass’n, supra, the defendant was a bank president and clearly a corporate officer. In Active Solutions v. Dell, supra, the court affirmed a judgment against the City of New Orleans’s chief technology officer but did not address whether he was a corporate officer; it merely assumed this (asking, perhaps rhetorically, “Who can doubt that Meffert as a public official owed a duty to the plaintiffs-appellants to perform in a manner consistent with his official duties?!”). Finally, we recognize the general provision, under La. R.S. 12:1303 A, that an LLC has the powers, rights and privileges of a corporation, and that managers owe a fiduciary duty to the |1BLLC and its members, La. R.S. 12:1314 A(l), but the plaintiffs have not cited, and we have not found, any specific provision extending the liability of LLC managers to third parties under the terms established in Spwmey. The district court did not err in sustaining the exception.
Count 8: The plaintiffs contend they stated a cause of action for conspiracy to fraudulently breach the Operating Agreement and the Management Agreement. They argue the district court misinterpreted New Orleans Jazz & Heritage Found. v. Kirksey, 2009-1433 (La.App. 4 Cir. 5/26/10), 40 So.3d 394, writ denied, 2010-1475 (La. 10/1/10), 45 So.3d 1100, which held that the action is for the underlying tort, not the conspiracy. Even without the conspiracy, they submit, fraud is a recognized intentional tort, Boudreaux v. Jeff, 2003-1932 (La.App. 1 Cir. 9/17/04), 884 So.2d 665.
An independent cause of action for civil conspiracy does not exist in Louisiana; rather, the actionable element is the intentional tort that the conspirators agreed to commit or committed, in whole or part, causing the plaintiffs injury. Haygood v. Dies, 48,485 (La.App. 2 Cir. 11/20/13), 127 So.3d 1008, writ denied, 2013-2955 (La. 2/28/14), 134 So.3d 1177; Hardy v. Easterling, 47,950 (La.App. 2 Cir. 4/10/13), 113 So.3d 1178. The plaintiffs’ argument makes it clear that the intention *676 al'-tort being asserted is intentional interference with contracts. However, < for the reasons already discussed, Querbes # 1, Nelson and Ms. Joseph are not liable for intentional interference because they are not corporate officers of Querbes-Cole-man. There is no conceivable set of facts under which a cause of action can be stated, and the district court did not err in sustaining the exception.
|1(!jVo Right of Action
By the second assignment of error, Coleman urges the district court erred in sustaining the exceptions of no right of action as- to Coleman individually, in Counts 1, 2, 4 and 8. He concedes the hornbook law that a member of an LLC has no separate or individual cause of action against third persons for wrongs committed against or causing damage to the LLC, Glod v. Baker, 2002-988 (La.App. 3 Cir. 8/6/03), 851 So.2d 1255, writ denied, 2003-2482 (La. 11/26/03), 860 So.2d 1135. He contends, however, that the rule does not apply when the loss is suffered by an individual member and not by the company. He argues that this was recognized, in dictum, in Thornton ex rel. Laneco Const. Systs. v. Lanehart, 97-2871 (La.App. 1 Cir. 12/28/98), 723 So.2d 1127, writ denied, 99-0177 (La. 3/19/99), 740 So.2d 115. He concludes-that the defendants’ breaches of fiduciary duties brought direct loss to him, and reiterates the fiduciary duty owed him under La. R.S. 12:1314 B.
Only a person having a real and actual interest to assert may bring an action. La. C. C. P. Art. 681. The peremptory exception of no right of action tests whether the plaintiff has a legal interest in judicially enforcing the right asserted. La. C. C. P. Art. 927 A(6); Skannal v. Bamburg, 44,820 (La.App. 2 Cir. 1/27/10), 33 So.3d 227, 175 Oil & Gas Rep. 597, writ denied, 2010-0707 (La. 5/28/10), 36 So.3d 254. It questions whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. Louisiana Paddlewheels v. Louisiana Riverboat Gaming Com’n, 94-2015 (La. 11/30/94), 646 So.2d 885. Whether a plaintiff has a right of 117action is a question of law that is subject to de novo review. Skannal v. Bamburg, supra.
A member, manager, employee or agent of a limited liability company is not a proper party to a proceeding by or against a limited liability company, except when the object is to enforce such a person’s rights against or liability to the limited liability company. La. R.S. 12:1320 C. This court and others have consistently applied § 1320 as written, holding that a member of an LLC has no right of action to assert a claim belonging to the LLC. Double-Eight Oil & Gas LLC v. Caruthers Prod. Co., 44,199 (La.App. 2 Cir. 5/20/09), 13 So.3d 754; Alden v. Louisiana Citizens Prop. Ins. Co., 2016-0044 (La.App. 4 Cir. 6/29/16), 197 So.3d 312; Glod v. Baker, supra. The district court found that all the alleged fiduciary duties were in favor of Querbes-Coleman, the LLC, of which Coleman was a member. On de novo review, we find no error.
We acknowledge the dictum in Thornton v. Laneco Const. Systs., supra: “However, there may be instances in which the breach of fiduciary duty causes a direct loss to the shareholder, but not to the corporation, in which case the shareholder may have a right to sue individually. See Wilson v. H.J. Wilson Const. Co., 430 So.2d 1227 (La. App. 1 Cir.), writ denied, 437 So.2d 1166 (1983).” We must observe, however, that the Thornton court found no direct loss to the shareholder, mooting the exception of no right of action, and the Wilson court found the shareholder’s claim was actually a derivative action under the former La. R.S. 12:91 (repealed by 2014 *677 La. Acts No. 328, effective 1/1/2015). In short, the formula in Thornton is merely dictum. In the recent case of Montgomery v. Lester, 2016-192 (La.App. 3 Cir. 9/28/16), 201 So.3d 966, writ denied, 2016-1944 (La. 12/16/16), 212 So.3d 1173, 2016 WL 7638434, the court relied on evidence that even though an LLC was the registered owner of a horse, the LLC members were its true owners and had the right of action for damages to the horse. No such evidence is present in the instant case. The district court did not err in sustaining the exception of no right of action.

Prescription

By their third assignment of error, the .defendants urge the district court erred in sustaining the exceptions of prescription as to Counts 1, 2, 4, 5, 7 and 10.[3] They show that prescription statutes must be strictly construed, always applying the construction that favors maintaining the claim. Wells v. Zadeck, 2011-1232 (La. 3/30/12), 89 So.3d 1145. They further argue that the exception of prescription poses a question of law and is thus subject to de novo review, citing Fox v. Reynolds Indus. Contractors Inc., 46,695 (La.App. 2 Cir. 11/16/11), 79 So.3d 1140.
When prescription is raised by peremptory exception, and evidence is introduced at the hearing on the exception, the trial court’s findings of fact are subject to manifest error review. Specialized Loan Servicing LLC v. January, 2012-2668 (La. 6/28/13), 119 So.3d 582, 80 UCC Rep. 1225; Hogg v. Chevron USA, 2009-2632 (La. 7/6/10), 45 So.3d 991; Blevins v. Long Trusts, 49,605 (La.App. 2 Cir. 2/26/15), 162 So.3d 500. In Fox, this court applied de novo review to the issue of no cause of action, but, contrary to the plaintiffs’ assertion, manifest error to the issue of prescription. In the 113instant case, the district court’s findings will be subject to manifest error review.
Counts 1,2, I and 10: The plaintiffs argue that the district court disregarded the stipulations regarding these counts. The plaintiffs stipulated that conduct occurring before certain dates (July 3, 2007, for Counts 1 and 2, and July 3, 1998, for Count 4) was prescribed, and that prescription for Count 10 was waived; they show that stipulations between the parties are binding on the court when not in derogation of the law. Watkins v. Lake Charles Mem’l Hosp., 2013-1137 (La. 3/25/14), 144 So.3d 944. They contend, however, that the court disregarded the stipulations and sustained the exceptions as to all claims under these four counts. They argue that the defendants committed a “series of related but distinct wrongful acts over a long period of time,” such that the older acts may be prescribed but the newer ones not, citing Fair Farms Inc. v. Holt, 48,246 (La.App. 2 Cir. 8/28/13), 124 So.3d 25, writ denied, 2013-2322 (La. 12/6/13), 129 So.3d 535, and Costello v. Citibank (South Dakota) NA, 45,518 (La.App. 2 Cir. 9/29/10), 48 So.3d 1108.
A stipulation has the effect of a judicial admission or confession, which binds all parties and the court. La. C.C. Art. 1853; Becht v. Morgan Bldg. & Spas Inc., 2002-2047 (La. 4/23/03), 843 So.2d 1109; Lewis v. City of Shreveport, 36,659 (La.App. 2 Cir. 12/11/02), 837 So.2d 44. A stipulation between the parties in a specific case is binding on the court when not in derogation of the law; it is the law of the case. Becht v. Morgan Bldg. & Spas, supra. An admission by a party in a pleading also constitutes a judicial confession and is full proof against the party making it. C.T. Traina Inc. v. Sunshine Plaza Inc., 2003-1003 (La. 12/3/03), 861 So. 2d 156; *678 Todd v. Angel, 47,911 (La.App. 2 Cir. 4/24/13), 114 So.3d 512.
As noted, the parties stipulated that the prescriptive period for Counts 1 and 2 began on July 3, 2007; conduct before that date would be prescribed. As to Counts 1 and 2, the district court found that by the plaintiffs’ own pleading (fourth supplemental and amending petition), the defendants’ alleged efforts to diminish the value of One Bellemead Centre began in at least 2004; their promotion of a takeover of the property allegedly began in the fall of 1998; their alleged failure to render a full and fair disclosure to Coleman and failure to repay members and calculate payments also both began in 1998. The district court was not plainly wrong to find that each of these events placed Coleman on notice of potential breaches of fiduciary duty, gross negligence and malfeasance long before the prescriptive date of July 3, 2007.
The parties stipulated that the prescriptive period for Count 4 was July 3, 1998. However, the district court correctly noted that the prescriptive period for a breach of fiduciary duty claim is one year “from the date of the alleged act, omission, or neglect,” or one year from discovery, subject to a maximum of three years. La. R.S. 12:1502 C. The court then found that by the plaintiffs’ own pleading (fourth supplemental and amending petition), the same incidents constituting the claim of breach and bad-faith breach of the Operating Agreement were the same as those outlined in the preceding paragraph and occurred between 1998 and 2004, well before the period set forth in § 1502 C. Again, we perceive no manifest error.
121 The parties stipulated that all exceptions were waived with respect to Count 10. However, the district court found that a claim under the Louisiana Unfair Trade Practices Act was subject to one-year prescription, La. R.S. 51:1409 E; Glod v. Baker, supra. The court then found that by the plaintiffs’ own pleading (a memorandum in support of response to defendants’ exceptions), all the conduct on which the unfair trade practices were based occurred in 2004. On this record, we perceive no manifest error.
Counts 4, 5 and 7: The plaintiffs show that the same wrongful acts can give rise to different causes of action, In re St Louis Encephalitis Outbreak, 41,250 (La. App. 2 Cir. 9/1/06), 939 So.2d 563, writ denied, 2006-2527 (La. 12/15/06), 945 So.2d 694. They then argue that the different causes of action are subject to different prescriptive periods. They submit that their claims of breach and bad-faith breach of the Operating Agreement and Development Agreement, and breach of the Management Agreement and “prospective management agreement” were not mere fiduciary claims subject to one-year prescription under R.S. 12:1502 C, but also breach of conduct claims subject to 10-year prescription under La. C.C. Art. 3499.
The prescriptive period applicable to an action is determined by the character of the action disclosed in the pleadings. Born v. City of Slidell, 2015-0136 (La. 10/14/15), 180 So.3d 1227; Fishbein v. State, 2004-2482 (La. 4/12/05), 898 So.2d 1260; Johnson v. Ledoux, 42,090 (La.App. 2 Cir. 5/16/07), 957 So.2d 911, writ denied, 2007-1482 (La. 10/5/07), 964 So.2d 946. In Starns v. Emmons, 538 So.2d 275 (La. 1989), a landlord sued his tenant for past due rent, late fees and attorney fees under a lease. The |aalandlord argued that the inclusion of the demand for rent arrearag-es “does not give the suit the character of an action to recover rent,” subject to three-year prescription, La. C.C. Art. 3494, but makes the “entire action sound in contract,” and subject to 10-year prescription, C.C. Art. 3499. The supreme court explicit *679 ly rejected this argument, “because it renders article 3494 useless.” All the actions covered by Art. 3494 essentially arise from contractual relationships; Art. 3494 does not present a choice between a contract remedy and some other remedy. Specifically, Art. 3494 “provides exceptions to the general rule stated in article 3499 that a personal action prescribes in ten years.”
The supreme court refused to treat a wage-claim case as a contract case, for prescription purposes, in Grabert v. Iberia Parish Sch. Bd., 93-2715 (La. 7/5/94), 638 So.2d 645, and refused to treat a claim for compensation for services rendered as a contract claim in Fishbein v. State, supra. Similarly, this court refused to treat a claim for unpaid compensation to a hospital’s medical director as a contract claim, Minor v. Monroe Surgical Hosp., 49,367 (La.App. 2 Cir. 11/19/14), 154 So.3d 665, 39 IER Cases 766, writ denied, 2014-2667 (La. 3/13/15), 161 So.3d 641; refused to treat an unpaid-wage claim as a contract matter, Raborn v. Gulf States Pipeline Corp., 41,974 (La.App. 2 Cir. 4/4/07), 954 So.2d 353, writ denied, 2007-0964 (La. 6/22/07), 959 So.2d 509; and refused to treat a conversion claim against a bank as a breach of contract between bank and customer, Hampton v. Hibernia Nat’l Bank, 598 So.2d 502 (La. App. 2 Cir. 1992). By contrast, the case of In re St. Louis Encephalitis Outbreak, supra, which | ^recognized different causes of action may arise from the same conduct, did not involve a prescription issue.
The district court found that Count 4, breach and bad-faith breach of the Operating Agreement, was essentially a claim of breach of fiduciary duty and subject to one-year prescription under R.S. 12:1502 C. The court also found that Count 5, breach and bad-faith breach of the Development Agreement, and Count 7, breach of the Management Agreement and the “prospective management agreement,” were essentially claims “for recovery of compensation for services rendered, including payment of salaries, wages, commissions, * * * professional fees, fees and emoluments” and subject to three-year prescription under C.C. Art. 3494 (1). The effort to recast these claims as personal actions subject to 10-year prescription would effectively negate R.S. 12:1502 and Art. 3494. The district court did not err in declining to apply the longer prescriptive period to these claims.

The “Partner Exceptions”

By their fourth assignment of error, the plaintiffs urge the court erred in sustaining the “partner exceptions” (filed as exceptions of “no right of action or no cause of action”) as to Counts 2, 4, 5, 7 and 8. The plaintiffs concede that the partnership is primarily liable for its own debts, but the partners are secondarily liable. La. C.C. Art. 2817; Lang v. Sproull, 45,208 (La.App. 2 Cir. 4/28/10), 36 So.3d 407. The plaintiffs conclude that given the partners’ potential virile share liability, the court should not have sustained these exceptions with prejudice.
This court observes that the claims raised by all the counts listed in this assignment of error have also been dismissed as prescribed (Counts 2, 5 |Mand 7, and part of Count 4), failing to state a cause of action (Counts 5, 7 and 8) or failing to disclose a right of action (Counts 2 and 8, and part of Count 4). Any question of secondary or virile share liability of the partners is academic and moot. The only portion of the claim that still has vitality is Querbes-Coleman’s derivative action for breach and bad-faith breach of the Operating Agreement (Count 4).
At the start of the hearing, counsel for the plaintiffs announced a number of stipulations, including that “any collection on *680 any judgment will be against Querbes Company No. 1 Partnership before the collection of the individual -partners of Querbes Company No. 1.” Counsel for the defendants agreed that this satisfied the exception. In other words, the stipulation preserves the plaintiffs’ rights against the partners under Art. 2817. In light of the stipulation, we perceive no error in the district court’s ruling on the partner exceptions.

Conclusion

For the reasons expressed, the judgment is affirmed. All costs are to be paid by the plaintiffs.
AFFIRMED.

. The court did not specifically address Count 11, presumably because the claims against those entities were extinguished by prescription or failure to state a cause or right of action.

. The plaintiffs have not contested the ruling as to Count 6.

. The plaintiffs do not contest the ruling as to Count 6.