Judgment rendered May 22, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,606-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

CHRISTINA MCCORMICK                          Plaintiff-Appellee

versus

EMILY D. WILHITE AND                         Defendants-Appellants
BLAKE WILHITE

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2018-1084

Honorable Alvin R. Sharp, Judge

* * * * *

SNELLINGS, BREARD, SARTOR,                   Counsel for Appellants
INABNETT & TRASCHER, LLP
By:  Wendy E. W. Giovingo
     D. Brian Allen

BRUSCATO LAW FIRM                            Counsel for Appellee
By:  John F. Bruscato

* * * * *

Before PITMAN, COX, and ELLENDER, JJ.

**ELLENDER, J.**

In this redhibition action involving the sale of a house, the sellers, Emily and Blake Wilhite, appeal a summary judgment in favor of the buyer, Christina McCormick, that found the Wilhites liable on grounds of fraud. For the reasons expressed, we reverse and remand.

## FACTUAL BACKGROUND

Emily and Blake Wilhite were living in a house on Tremont Lane, in the Country Estates West subdivision of West Monroe.[1] In early 2017, they decided to move, to accommodate their expanding family, and hired a realtor, Heather Guilliot, to list the property. With Guilliot's assistance, they executed a property disclosure form. In this, they answered "no" to the following questions:

> Has any flooding, water intrusion, accumulation, or drainage problem been experienced with respect to the land?
>
> Has any structure on the property ever taken water by flooding (rising water or otherwise)?
>
> Does the property or any of its structures contain any of the following? Mold/mildew; toxic mold; other adverse materials or conditions.

Christina McCormick came to view the house, was interested, and received the property disclosure. On February 22, 2017, she signed a waiver of warranty and redhibition rights addendum and made an offer on the house, which the Wilhites accepted.[2] Before the closing, which was set for March 31, McCormick retained a residential home inspector.[3] The inspector

---

[1] The house was Emily Wilhite's separate property, but both she and her husband are parties to the suit.

[2] The purchase price was $247,000.

[3] The petition did not identify the home inspector.

found a few minor things (replacing window panes and caulking windows, repairing gutter leaks and loose venting of the water heater), all of which the Wilhites agreed to fix. However, according to McCormick's petition, he found no evidence of flooding, water intrusion, accumulation, or drainage problems.

The closing took place on March 31, 2017, and McCormick took possession that day. The act of sale contained an "as is" addendum, reciting that the buyer had the opportunity to examine and inspect the premises, and accepted the property "AS IS, WHERE IS," without any warranties of any kind (capitals in original).

According to the petition, about two months later McCormick was considering some remodeling and called a painter to the house. On May 2, the painter discovered "numerous" mold/mildew sites on the concrete of the enclosed garage, recent repainting of the garage walls and ceilings, damage to the door of the utility closet, and a "moldy smell immediately when he walked into the garage." Around the same time, the area received heavy rainfall, and McCormick noticed water draining into the garage, pooling on the floor, and lingering for several days after the rain ended. She also noticed water accumulation in front of the front door, under the colonnade.

## PROCEDURAL HISTORY

McCormick filed this suit in March 2018 to rescind the sale. After reciting all the facts listed above, she alleged she was not experienced in detecting such things, but "it appears that" the Wilhites knew about and failed to disclose them. "There is simply no explanation that could show that these problems suddenly began to occur after the closing." She sought

2

to rescind the sale for redhibitory vices, with reimbursement for all her costs and attorney fees because of the Wilhites' fraud and misrepresentation.

The Wilhites denied all allegations and asserted the "as is" addendum as a defense. After a pause for COVID lockdowns, they filed a motion for summary judgment seeking dismissal of all claims. In support, they filed their own affidavits, which asserted, "At no time during our ownership of this home did we experience any flooding problems, water problems, or intrusion problems, nor did we experience any mold, mildew, nor toxic mold[.]" They also filed the affidavit of their realtor, Guilliot, who cited the property disclosure form and stated, "At no time was I ever made aware" of the alleged problems.

McCormick opposed the motion, arguing "the central issue of material fact" is "whether the defendants were aware of the flooding, mold, and mildew problems" when they signed the property disclosure, and "this remains to be tried." They attached eight affidavits (described below).

McCormick then filed her own motion for summary judgment, on the issue of fraud and intentional misrepresentation. She argued that her documents "demonstrate far beyond a preponderance" that the Wilhites knew about flooding, mold, and mildew in the house but falsely denied such knowledge. In support, she attached a copy of the property disclosure and her own affidavit outlining all the things she learned after May 2, 2017. She argued that she spent some $125,000 trying to fix the problems, and ultimately had to sell the house, but got only $247,500 plus upgrade fees and furniture, meaning that the whole ordeal had set her back some $150,000. She then attached her eight supporting affidavits:

3

**Brett Lamartiniere,** a construction and remodeling contractor, had a contract with a roofer in "early 2017" to work on the house, and found "numerous problems in the garage," including mold on the ceiling and garage wall; he replaced some drywall and painted over others. (Neither the affidavit nor the attached invoice gave a specific date.)

**Bruce Rollins,** a construction and painting contractor, came to the house on May 2, 2017, and found a water mark on the garage door, utility room door, and door leading from the garage into the house, about 6-8 inches high, "indicative of past and recent flooding" caused by water intrusion from the neighborhood; in his view, nobody could have lived in the house any length of time without being aware of this.

**Christopher Cain,** another contractor, visited the house on May 2, 2017, and saw leaking from the attic in the garage, water marks in the garage and on the exterior walls, and smelled an overwhelming scent of mold in the garage; he "did not find it to be possible" that the prior owner was unaware of these problems.

**Ioannis Petikas,** an environmental testing technician, came to the house in September 2017, finding aspergillus and penicillium spores in the living room and two bedrooms, in elevated concentrations that "could pose a potential airborne threat."

**Dustin Christy,** a foundations and drainage contractor, found the house was nearly at the bottom of a hill, such that in a heavy rain water would run directly into the garage door, and "historical evidence" (water lines) that this had already happened; he installed French drains to alleviate the problem. (He gave no timeframe when he made his inspection or repairs.)

**Brandon Land,** a landscaping contractor, came to the house in mid-2017 and found a drainpipe had been improperly installed, allowing rainwater to flow into the garage; he made a concrete cut and dug drains to prevent this flow. He did "not believe it to be possible anyone" could go into the garage during a rainfall and not know water was coming in.

**Jimmy Dortch,** another building and repair contractor, came to the house in July 2017 and recommended installing catch basins and making concrete cuts; he did "not believe it is possible" anyone lived in the house any period of time without noticing these problems.

**Linda Edwards,** McCormick's realtor, was aware of the property disclosure, and after the problems were discovered, she tried to sell the house but was unsuccessful.

4

Finally, McCormick attached a bundle of photos, the first showing a rotten area on the inside of a wooden door, between the floor and the lower hinge, and several others showing a puddle seeping under the carport door and onto the front porch.

The Wilhites opposed, reiterating that the sale was "as is," and attached their own depositions. They admitted the roof had been damaged in a hailstorm, with water coming through the ceiling and down some walls; they called their insurer, who sent a roofer to repair it.[4] Emily Wilhite stated she knows what mold smells like, and she never noticed this; Blake Wilhite said he understood "flooding" to mean rising water, and he did not consider the minor roof leak to be flood damage.

## ACTION OF THE DISTRICT COURT

After a hearing in April 2023, the district court ruled orally that "plaintiff has shown the absence of any genuine issue of material fact" and was entitled to judgment as a matter of law. It rendered judgment finding no genuine issue of material fact that the Wilhites committed fraud. It granted McCormick's motion for summary judgment and denied the Wilhites'.

The Wilhites appealed. They raise two assignments of error: the court erred in granting McCormick's motion for summary judgment and in finding no genuine issue of material fact.

## APPLICABLE LAW

Fraud is defined as a "misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or

---

[4] Emily Wilhite said the person she talked to and emailed at the roofer's was "Lori," and Blake Wilhite said the person who actually worked on the roof was "Jeff Raffray." McCormick's counsel did not ask them if they ever talked to Brett Lamartiniere.

5

to cause a loss or inconvenience to the other." La. C.C. art. 1953; *Lomont v. Bennett*, 14-2483 (La. 6/30/15), 172 So. 3d 620. There are three basic elements to an action for fraud against a party to a contract: (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to a cause of the contract. *Shelton v. Standard/700 Assocs.*, 01-0587 (La. 10/16/01), 798 So. 2d 60; *Priority Hosp. Group Inc. v. Manning*, 53,564 (La. App. 2 Cir. 9/23/20), 303 So. 3d 1106, *writ denied*, 20-01238 (La. 1/20/21), 308 So. 3d 1160.

The motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. La. C.C.P. art. 966 (A)(3). A genuine issue is one about which reasonable persons could disagree. *King v. Town of Clarks*, 21-01897 (La. 2/22/22), 345 So. 3d 422. It is not the function of the trial court on a motion for summary judgment to determine, or even inquire into, the merits of the issues raised, or to weigh conflicting evidence of material fact. Rather, the court must view the record and all reasonable inferences to be drawn from it in the light most favorable to the nonmoving party. *Id.* Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of trial on the merits. *Id.*

The courts have uniformly held that summary judgment "is seldom appropriate for determinations based on subjective facts, such as motive, *intent*, good faith, knowledge, and malice." *Id.* (emphasis added), and citations therein; *Priority Hosp. Group Inc. v. Manning*, *supra*; *Lucas v.*

6

*Maison Ins. Co.*, 21-1401 (La. App. 1 Cir. 12/22/22), 358 So. 3d 76; *Grace v. Equipco LLC*, 23-0119 (La. App. 4 Cir. 10/4/23), 376 So. 3d 243.

The courts have also stressed that credibility determinations or the weighing of conflicting evidence is inappropriate on motion for summary judgment. *Luther v. IOM Co. LLC*, 13-0353 (La. 10/15/13), 130 So. 3d 817, and citations therein; *City of Ruston v. Womack & Sons Const. Group Inc.*, 55,328 (La. App. 2 Cir. 11/15/23), 374 So. 3d 311, *writ denied*, 24-00086 (La. 3/5/24), __ So. 3d __, and citations therein.

Appellate courts review motions for summary judgment de novo, using the same criteria that governed the trial court's determination of whether summary judgment is appropriate. *Farrell v. Circle K Stores Inc.*, 22-00849 (La. 3/17/23), 359 So. 3d 467; *Noland v. Lenard*, 55,342 (La. App. 2 Cir. 11/15/23), 374 So. 3d 1133, *writ denied*, 23-01670 (La. 2/14/24), 379 So. 3d 32.

## DISCUSSION

The Wilhites' principal argument, based on *Shelton v. Standard/700 Assocs.*, *supra*, and *Louapre v. Booher*, 16-0236 (La. App. 4 Cir. 8/31/16), 216 So. 3d 1044, is that the summary judgment evidence leaves gaping issues as to each essential element of a fraud claim. On de novo review, we agree.

The most obvious issue comes in the second element, the intent to obtain an unjust advantage or cause damage or inconvenience to another; obviously, the issue of intent is inappropriate for decision on motion for summary judgment. *King v. Town of Clarks*, *supra*; *Priority Hosp. Group Inc. v. Manning*, *supra*. On this record, the district court committed legal

7

error when it made a factual determination of the Wilhites' intent on summary judgment.

Moreover, other genuine issues of material fact also persist. The crucial issue is whether the Wilhites had knowledge of the flooding issue during their ownership; McCormick argues that their denials are "simply untrue," and that with the "mountain" of contrary expert evidence, "reasonable persons could not believe" the Wilhites' version of events. Brief of appellee, 5, 7. Manifestly, these are questions of credibility and inappropriate for resolution on summary judgment. *Luther v. IOM Co. LLC*, *supra*; *City of Ruston v. Womack & Sons Const. Group*, *supra*. In the posture of this case, the Wilhites' knowledge is not just a genuine issue, but a critical issue.

Even without the significant issues of intent and credibility, the documentary evidence leaves genuine issues unresolved. McCormick alleged in petition that prior to the sale, she "retained a residential home inspector" to walk through and advise of any issues or concerns, and the inspector did not report any flooding, water intrusion, accumulation, or drainage problem; further, the inspector "did not report any evidence of Mold/Mildew or Toxic Mold." Pet., ¶ 9. An admission by a party in a pleading constitutes a judicial confession and is full proof against the party making it. La. C.C. art. 1853; *C.T. Traina Inc. v. Sunshine Plaza Inc.*, 03-1003 (La. 12/3/03), 861 So. 2d 156; *Coleman v. Querbes Co. No. 1*, 51,159 (La. App. 2 Cir. 2/15/17), 218 So. 3d 665, *writ denied*, 17-0694 (La. 6/29/17), 222 So. 3d 31. This admission shows that at least one (unnamed) expert did not find what McCormick's other experts claimed to find. Any determination of the ultimate fact – whether the defects existed at the time of

8

the sale – will require the weighing of evidence, and was not suitable for resolution on summary judgment.

## CONCLUSION

For the reasons expressed, the judgment is reversed and the case remanded to the district court for further proceedings. All costs are to be paid by the plaintiff, Christina McCormick.

**REVERSED AND REMANDED**.