MOORE, J.
 

 | ,The defendant contractor walked off the job before completing a building contract with the plaintiff. Over the next 10 years, the plaintiff used other contractors
 
 *951
 
 to finish the job. She then sued the defendant for the cost of completion. Although the trial court rendered judgment in her favor, the plaintiff appeals, contending that the damage award is far too low. We affirm.
 

 FACTS
 

 John W. Russell, a home remodeler, entered into a contract with Carolyn Davis on January 16, 1996, to build a doll museum annexed to her home to display her antique dolls and other collectibles. Ms. Davis had herself been involved in building and remodeling over 30 homes. In this instance, Ms. Davis supplied the plans for the two-story structure measuring approximately 16' x 32', which is roughly 1,000 square feet. The plans contained no materials list, however. Ms. Davis testified that she obtained bids from several contractors who submitted bids at or about the same price as Mr. Russell’s bid.
 

 Russell testified that he took the plans and determined the materials needed and estimated his cost to build the structure and estimated his time. He did not reduce these materials and calculations to writing, stating that he did these calculations in his head. He submitted a bid to the plaintiff offering to build the structure for $50,000 under the following handwritten contract:
 

 16 Jan 1996
 

 Carolyn Khoury
 
 [1]
 

 12445 living Bluff
 

 Shreveport, La. 71107
 

 1 doll house
 

 close to plains [sic]
 

 stained ceader [sic] siding
 

 eeader shinge [sic] roof
 

 cabnet [sic] work aeording [sic] to
 

 plain with minor adjments [sic]
 

 steel & concrete intrance [sic] steps
 

 $50,000.00
 

 John Russell
 

 Between April and August of 1996, Ms. Davis advanced Mr. Russell several payments totaling $42,000. Mr. Russell worked on the project until August 15, 1996, when he gathered his tools and told Ms. Davis he was leaving. Both parties agree that under the contract, Russell was not responsible for installing any of the plumbing, electrical, heating and air conditioning, carpet, security system or music system. Mr. Russell testified that he contracted to build the structure and close in the outside. He said he was also supposed to build the display cubicles and cabinets. The parties disputed, however, whether Russell was to paint the interior and exterior. There is also disagreement over payment regarding a protected walkway from the home to the new structure, which Russell said would require an additional $2,000. Ms. Davis said that she understood that the money would come from $2,000 taken off the price when she agreed to allow sheet rock for the walls rather than plywood.
 

 Tensions apparently arose after Ms. Davis made some changes in the specifications and materials that Russell had selected to build the structure. |sThe first change was in the siding, which Russell testified cost $300 more, and was much more expensive to install. Additionally, although the plans called for cedar shingles, Ms. Davis changed the shingles Russell had picked to cedar shingles she located in Canada that had to be hand nailed rather than stapled with a gun. Russell said this cost him $1,500 more to install. Russell also testified that Ms. Davis wanted the door trim to match the trim in her house, which required Russell to fabricate the trim himself since the style was no longer sold on the market.
 

 
 *952
 
 Ultimately, in August of 1996, after Ms. Davis had refused to pay Russell $1,500 for the extra expense of the shingles, he walked off the job and did not return. Ms. Davis somewhat disagrees with this account, stating that she had not ruled out paying the $1,500, but felt that Mr. Russell needed to complete more of the project before she advanced any more money.
 

 Ms. Davis testified regarding several parts of the project that were left incomplete which included all of the trim and painting the interior walls and papering, the (sub)flooring, a bay window, cabinets, display cubicles, staining and finishing the cabinets and exterior, vents and several other things. None of the windows were installed. Russell simply left a tarp to cover the openings.
 

 Ms. Davis testified that she did not have the funds to hire someone to complete the project. Over a period of 10 years (mostly toward the end of the 10 years) Ms. Davis had the project completed. She contended the cost of completion was $62,101.54.
 

 |,(At trial, Ms. Davis introduced into evidence several photographic exhibits of the incomplete work, and the cancelled checks and ledger entrees showing the amount of money she paid Russell and the amount of money she spent to finish the project. Russell introduced no evidence of receipts for the materials and labor for the $42,000 he was advanced. He said it was too long ago and he had thrown them away. Neither party introduced any expert testimony. Ms. Davis also introduced exhibits showing the amounts of money she spent to complete the project.
 

 After the bench trial, the trial court concluded that Mr. Russell had breached the contract by walking off the job. It concluded, however, that Ms. Davis “either greatly overpaid or was greatly overcharged what it took to finish out the project.” The court found that an appropriate cost to complete the remainder of the contract with Mr. Russell was $15,000. However, this amount was subject to a reduction for the $8,000 remaining on the $50,000 contract and also subject to a reduction of $1,500 for the additional costs of installing the different shingles.
 

 Applying the credits to the judgment, Ms. Davis received $5,500, plus court costs and interest from the date of judicial demand.
 

 This appeal followed.
 

 DISCUSSION
 

 Ms. Davis’s sole assignment of error is that the trial court erred in awarding only $15,000 of the $62,101.54 required for her to complete the contract that Mr. Russell was required to complete. She contends that the labor costs alone to complete the project were $48,282.67 as shown by [.^Exhibits 1-1 ttoough 1-95.
 

 In support of her claim, Ms. Davis submitted into evidence an impressive number of exhibits. These highly organized exhibits include literally dozens, perhaps well over a hundred, cancelled checks, ledger entries, receipts of items from nails to glass to paint supplies, etc., and invoices for work and materials from various companies. The exhibits also contain photographs of the state of completion at the time Mr. Russell walked off the job. Based upon these exhibits and her testimony, the plaintiff thus contends that she has carried her burden of proving that she spent the amount claimed to finish the project that Mr. Russell was supposed to do.
 

 Contracts have the effect of law for the parties and must be performed in good faith. La. C.C. art. 1983. Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. Where factual findings are pertinent to the interpretation of a contract, those factual findings are subject to
 
 *953
 
 the manifest error standard of review.
 
 Industrial Roofing & Sheet Metal Works, Inc. v. J.C. Dellinger Memorial Trust,
 
 32,-048 (La.App. 2 Cir. 8/20/99), 751 So.2d 928,
 
 writs denied,
 
 99-2948, 99-2958 (La.12/17/99), 752 So.2d 166. In applying this standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one. If the fact finder’s findings are reasonable in light of the record, viewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed Ifithe evidence differently. Reasonable evaluations of credibility and inferences of fact should not be disturbed upon review where conflict exists in the testimony. Absent a finding of manifest error, the judgment should be upheld.
 
 Peterson Contractors, Inc. v. Herd Producing Company, Inc.,
 
 35,567 (La.App. 2 Cir. 2/27/02), 811 So.2d 130.
 

 La. C.C. art. 2769 governs damages for breach of building contracts. It provides:
 

 If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract.
 

 The standard for reviewing the award of damages for breach of contract is whether the trial court abused its discretion.
 
 Mount Mariah Baptist Church, Inc. v. Pannell's Associated Electric, Inc.,
 
 36,-361 (La.App. 2 Cir. 12/20/02), 835 So.2d 880, writ denied, 2003-0555 (La.5/2/03), 842 So.2d 1101;
 
 Hernandez v. Martinez,
 
 2000-1282 (La.App. 5 Cir. 2/28/01), 781 So.2d 815. For a breach of a building contract under La. C.C. art. 2769, the appropriate measure of damages is the cost of repairing any defects or of completing the work.
 
 Mount Mariah Baptist Church, Inc., supra; Guy T. Williams Realty, Inc. v. Shamrock Construction Company,
 
 564 So.2d 689 (La.App. 5 Cir.1990),
 
 writ denied,
 
 569 So.2d 982 (La.1990). The plaintiff bears the burden of proof.
 
 Id.
 

 In this instance, the trial court stated in its oral reasons that there was an agreement between the parties that was “not completely fleshed out.” The court found that Ms. Davis was entitled to “a reasonable claim for the costs to complete the job, subject to certain credits.” But it also found that |7“Ms. Davis either greatly overpaid or was greatly overcharged what it took to finish out the project.” It concluded that a reasonable sum to complete the project as Mr. Russell left it was $15,000. The court based this conclusion on the ratio of labor versus materials in what remained to be done on the project, the fact that Ms. Davis testified that other contractors had made bids at a price close to Mr. Russell’s bid, and finally, the amount claimed by Ms. Davis seemed unreasonable given the fact that the work involved merely completing unfinished carpentry work of this 1,000 foot building.
 

 After our review, we conclude that the trial court did not abuse its discretion in this damage award. Ms. Davis is quite experienced in building projects, as she has built or remodeled over 30 homes. She testified that she recognized immediately from Mr. Russell’s handwritten bid offer that he had not protected himself in the written agreement since he did not state he was not responsible for heating, plumbing, etc. It is also clear from this record that Ms. Davis is very meticulous in keeping records and has very high expectations from contractors.
 

 The contract itself simply stated that Mr. Russell would build the “doll house” according to the plans. There was no materials list or “punch list” to indicate the exact degree of completion required and the quality of the materials expected.
 
 *954
 
 Even though Mr. Russell admitted that Ms. Davis obtained completion of the project “like I would have loved to have built it,” and perhaps he earlier stated in a deposition that “it’s completed like it was supposed to be,” we think there is enough ambiguity in Mr. Russell’s |stestimony as well as other indicators of disagreement that there was a disparity between what Ms. Davis envisioned and what Mr. Russell thought his end of the bargain entailed.
 

 Finally, the fact that Ms. Davis paid an additional $48,232.67 in labor to finish the work required in the contract with Mr. Russell even after Mr. Russell had spent four to five months working on the building surely indicates that something is amiss. This figure indicates that Ms. Davis spent nearly $105,000 to build a 1,000 square foot unfinished structure exclusive of plumbing, electrical wiring, heating and air conditioning and so on.
 

 Accordingly, we conclude that the damage award fashioned by the trial court was objectively reasonable and did not constitute an abuse discretion. The judgment is therefore affirmed.
 

 AFFIRMED.
 

 [1]
 

 . "Khoury" is the plaintiff's former last name by marriage.