DREW, J.
|,Plaintiffs, Sanctuary Capital, LLC, and a group of other members of North Louisi *892 ana Bidco, LLC (“NLB”), appeal from a judgment sustaining an exception of prematurity and dismissing their action against NLB. For the following reasons, we reverse and remand.
NLB was organized in 1999 and licensed as a Business Industry Development Corporation to provide financing to small businesses in North Louisiana. Soon after the company was formed, its members executed a detailed operating agreement. This agreement provides, in part, for the management and control of the company; the agreement named defendants Richard Cloud and James Garner as the company’s managers. Cloud, his son, and Garner control a majority ownership interest in NLB.
In September 2013, NLB, Cloud, Garner and two other companies affiliated with Cloud and Garner were sued by Craig Taylor, Inc. (“CTI”), a company with which these defendants had engaged in business dealings. CTI demanded, among other things, a money judgment against NLB, Cloud and Garner. CTI’s 185-para-graph petition alleged that Cloud and Garner had engaged in various acts of self-dealing with NLB as well as fraud and forgery.
On May 2, 2014, 11 members of NLB filed a petition which they captioned as a derivative action; this action was combined with a demand for injunctive relief. The defendants in this action included NLB, Cloud and Garner. Plaintiffs urged that they sought to enforce NLB’s own right to examine the company’s “financial and other” records, an effort that had been thwarted by Cloud and Garner’s refusal to make the records available to them. Plaintiffs asserted that CTI’s allegations of wrongdoing against |2Cloud and Garner, along with a $6 million bad debt expense on NLB’s 2013 financial statement, were behind their efforts to scrutinize NLB’s records.
In response, NLB, Cloud and Garner raised an exception of prematurity. They cited the provisions of NLB’s operating agreement requiring members of the LLC to mediate their disputes and, if mediation failed, to submit disputes to arbitration. Article IX of the operating agreement provides, in part:
A. Mediation.
1. Agreement to Use Procedure.
The Members have entered into this agreement in good faith and in the belief that it is mutually advantageous to them. It is with that same spirit of cooperation that they pledge to attempt to resolve any dispute amicably without the necessity of litigation. Accordingly, they agree that if any dispute arises between them relating to this Agreement (the Dispute) they will first utilize the procedures used in this Article IX (the Procedure) before any Additional Proceedings are commenced. The Disputing Members agree and commit themselves to participate in good faith with the intention of resolving the Dispute if at all possible.[1]
The plaintiffs opposed the exception, arguing that the dispute was not one among members but instead was between NLB itself and managers Cloud and Garner.
The trial judge heard the exception of prematurity on July 7, 2014, found that this was á dispute among members, and sustained the exception. The judge signed a judgment on July 25, 2014, dismissing the plaintiffs’ action, and the plaintiffs took a timely appeal.
*893 |sThe plaintiffs’ action, although captioned as a derivative action,[2] has elements of both a derivative action and an ordinary proceeding by individual plaintiffs against the individual defendants Cloud and Garner. Some of the demands in the petition arguably benefit both NLB in its own right and the member plaintiffs in their own right.
The parties have framed the issue in this case as whether this is a true derivative action by the LLC, thus avoiding the mediation/arbitration agreement, or an individual action between members that they presume to be subject to that agreement. Although this appears to be a hybrid of a derivative action and an action by individual members, we conclude that the action here is fundamentally a demand by members of the LLC against the company itself. In other words, the members are attempting to enforce their rights to see the company’s records against the company, not against other members. Moreover, we believe that this dispute does not “relat[e] to” the agreement in a sense that triggers the mediation/arbitration clause.
In Davis v. Russell, 44,909 (La.App.2d Cir.12/9/09), 26 So.3d 950, 952, this Court explained:
Contracts have the effect of law for the parties and must be performed in good faith. La. C.C. art. 1983. Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. Where factual findings are pertinent to the interpretation of a contract, those factual findings are subject to the manifest error standard of review.
However, where the meaning of a contract is to be determined solely from the words upon its face, without the necessity of extrinsic evidence, the appellate courts are as competent to review the evidence as the trial court, and no special deference is usually accorded the trial court’s findings. Schroeder v. Board of Sup’rs of La. State Univ., 591 So.2d 342, 345 (La.1991).
Louisiana law favors arbitration, La. R.S. 9:4201, and the supreme court has instructed that:
[W]hen the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration. The weight of this presumption is heavy and arbitration should not be denied unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that could cover the dispute at issue.
Aguillard v. Auction Mgmt. Corp., 2004-2804 (La.6/29/05), 908 So.2d 1, 18. Typi *894 cally the remedy for a lawsuit brought in violation of an arbitration agreement when the “issue involved in the suit or proceedings is referable to arbitration under such an agreement” is a stay of the lawsuit until arbitration is concluded. La. R.S. 9:4202.
Article VIII of the NLB operating agreement provides, in part:
B. Books and Records.
|B1. The Manager shall keep or cause to be kept complete and accurate books and records of the Company and supporting documentation of the transactions with respect to the conduct of the Company’s business. The records shall include, but not be limited to, complete and accurate information regarding the state of the business and financial condition of the Company for the last three most recent years; a copy of the articles of organization and operating agreement and all amendments to the articles and operating agreement; a current list of the names and last known business,. residence, or mailing addresses of all Members; and the Company’s federal, state, and local tax returns for the last three most recent years.
2. The books and records shall be maintained in accordance with sound accounting practices and shall be available at the Company’s principal office for examination by any Member or the Member’s duly authorized representative at any and all reasonable times during normal business hours.
3. Each Member shall reimburse the Company for all costs and expenses incurred by the Company in connection with the Member’s inspection and copying of the Company’s books and records.
[[Image here]]
G. Title to the Company.
1. Except as provided in Article VIII(G)(2), all property (whether moveable or immovable, corporeal or incorporeal) acquired by the company shall be acquired and held by the Company in its name.
2. The Manager may direct that legal title to all or any portion of the Company’s property be acquired or held in a name other than the Company’s name. Without limiting the foregoing, the Manager may cause title to be acquired and held in its name or in the names of trustees, nominees, or straw parties for the Company. It is expressly understood and agreed that the manner of holding title to the' Company’s property (or any part thereof) is solely for the convenience of the Company and all of that property shall be treated as Company property.
As Article VIII, Section G makes clear, all property acquired by the company is held by the company in its name. This property includes the company’s books and records, which are not the personal property of the | (¡managers or members; plainly, these materials are the property of the company itself. Although the company may act only through its managers or, where authorized, its members, the books and records nevertheless are the company’s own property.
Thus, thé right of members to view the company’s books and records is fundamentally a question of the rights of the members vis-a-vis the company and not a dispute between members and managers even though the managers may be the parties charged with acting on behalf of the company. Accordingly, this dispute is neither a dispute between members nor a true derivative action to enforce the company’s rights. The plaintiff members are seeking to enforce their own rights against *895 the company itself. For purposes of the mediation/arbitration clause, this is not a dispute between members. In the absence of a genuine dispute between members, the arbitration clause is not triggered.
Moreover, in order to trigger the arbitration/mediation clause of the operating agreement, the action must be a “dispute arising] between them relating to this Agreement.” (Emphasis added.) The provisions of the operating agreement are similar to the default provisions of Louisiana law regarding access to LLC records, La. R.S. 12:1319.[3] The agreement’s 17“books and records” provision is, in fact, broader than the statutory provision; the operating agreement applies the adjective “reasonable” only to the “times” when records can be inspected, whereas the statute requires that the “request” for the records be “reasonable.” See Glenn G. Morris and Wendell H. Holmes, Business Organizations, 8 La. Civ. L. Treatise § 44.21 (2014), for a discussion of the scope of a “reasonable” request under the default statutory language. Regardless, the operating agreement makes it clear that members have the right to inspect the company’s “books and records.”
In this case, the parties appear to agree that the operating agreement is the contract among the members and none deny that the agreement, including the agreement allowing examination of the company’s books and records, governs their conduct. In the absence of a dispute relating to the agreement, the arbitration clause is again inapplicable.
Accordingly, the judgment of the trial court is hereby reversed, and this matter is remanded for further proceedings at appellees’ cost.
REVERSED AND REMANDED.

. Although "Dispute”, "Disputing Members”, and "Additional Proceedings” are capitalized terms in this section, the terms are not defined in Article IX or in Article XI, the "General Provisions” section of the agreement that defines other capitalized terms.

. La. C.C.P. art. 615 provides:
The petition in a class action brought by a shareholder, partner, or member of a corporation or unincorporated association because it refuses to enforce a right which it may enforce shall:
(1) Allege that the plaintiff was a shareholder, partner, or member at the time of the occurrence or transaction of which he complains, or that his share, partnership, or membership thereafter devolved on him by operation of law.
(2) Allege with particularity the efforts of the plaintiff to secure from the managing directors, governors, or trustees and, if necessary, from the shareholders, partners, or members, the enforcement of the right and the reasons for his failure to secure such enforcement, or the reason for not making such an effort to secure enforcement of the right.
(3) Join as defendants the corporation or unincorporated association and the obligor against whom the obligation is sought to be enforced.
(4) Include a prayer for judgment in favor of the corporation or unincorporated association and against the obligor on the obligation sought to be enforced.
(5) Be verified by the affidavit of the plaintiff or his counsel.

. La. R.S. 12:1319 provides, in part:
B. Unless otherwise provided in the articles of organization or an operating agreement, a member may do any of the following:
(1) At the member's own expense, inspect and copy any limited liability company record upon reasonable request during ordinary business hours.
(2) Obtain from time to time upon reasonable demand the following:
(a) Trae and complete information regarding the state of the business and financial condition of the limited liability company.
(b) Promptly after becoming available, a copy of the limited liability company’s federal and state income tax returns for each year.
(c) Other information regarding the affairs of the limited liability company as is just and reasonable.