Judgment rendered November 20, 2019.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,157-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SANCTUARY CAPITAL, LLC,                    Plaintiffs-Appellants
ET AL. ON BEHALF OF NORTH
LOUISIANA BIDCO, LLC

versus

RICHARD D. CLOUD, JAMES                    Defendants-Appellees
RANDOLPH GARNER, AND
NORTH LOUISIANA BIDCO,
LLC

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2014-1379

Honorable Daniel Ellender, Judge

* * * * *

NELSON, ZENTNER, SARTOR          Counsel for Appellants,
& SNELLINGS, LLC                 Sanctuary Capital, LLC,
By: George M. Snellings IV       J. Bishop Johnston, W.
    David H. Nelson              Clinton Raspberry, Jr.,
                                 MCS Two, LLC, O. A.
                                 Cannon, Jr., Nelson D.
                                 Abell, III, R. Stewart
                                 Ewing, Jr., Carolyn W.
                                 Perry, Annette Williams
                                 Carroll, Molly Williams,
                                 and Clark M. Williams,
                                 III, Individually and on
                                 Behalf of North Louisiana
                                 Bidco, LLC

BREITHAUPT, DUBOS, & WOLLESON,
LLC
By: R. Alan Breithaupt
    James R. Close

Counsel for Appellee,
Richard D. Cloud

HECK LAW FIRM, LLP
By: Charles H. Heck, Sr.
    Charles H. Heck, Jr.

Counsel for Appellee,
James Randolph Garner

WHEELIS & ROZANSKI
By: Stephen D. Wheelis
    Richard A. Rozanski
    Shawn M. Bordelon

Counsel for Appellee,
North Louisiana Bidco,
LLC

* * * * *

Before GARRETT, STONE, and McCALLUM, JJ.

**GARRETT, J.**

This is the third time this lawsuit has come before this court. The suit began when members of a limited liability company ("LLC") sought access to the company's financial records. They have now added claims for damages against the LLC's managers, Richard D. Cloud and James Randolph Garner. This instant appeal was brought by the plaintiffs after the trial court reversed an earlier ruling and granted exceptions of no cause of action filed by the managers. We reverse the trial court judgment and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

This matter is before us on exceptions of no cause of action. Accordingly, all of the facts described below come solely from the allegations in the petitions that are before us for review, together with the attachments filed with those petitions. Since we are dealing with peremptory exceptions that were originally denied but later reurged and granted by the trial court, an explanation of the circuitous route this case has taken is necessary to understand its current procedural posture.

North Louisiana Bidco, LLC ("NLB"), was organized in 1999 and licensed as a Business Industry Development Corporation to provide financing to small businesses in North Louisiana. In 2000, the members of the company executed a detailed operating agreement, which addressed the management and control of the company.[1] The agreement named Cloud and Garner as the company's managers. It also contained the following provisions pertaining to examination of the company's books and records:

---

[1] The operating agreement was attached to the plaintiffs' original petition.

ARTICLE VIII.

BOOKS, RECORDS, ACCOUNTING, AND TAX
ELECTIONS

. . .

B.      Books and Records.

1. The Manager shall keep or cause to be kept complete and accurate books and records of the Company and supporting documentation of the transactions with respect to the conduct of the Company's business.  The records shall include, but not be limited to, complete and accurate information regarding the state of the business and financial condition of the Company for the last three most recent years; a copy of the articles of organization and operating agreement and all amendments to the articles and operating agreements; a current list of the names and last known business, residence, or mailing addresses of all Members; and the Company's federal, state, and local tax returns for the last three most recent years.

2. The books and records shall be maintained in accordance with sound accounting practices and shall be available at the Company's principal office for examination by any Member or the Member's duly authorized representative at any and all reasonable times during normal business hours.

3. Each Member shall reimburse the Company for all costs and expenses incurred by the Company in connection with the Member's inspection and copying of the Company's books and records.
. . .

D.      Reports.  Within seventy-five (75) days after the end of each taxable year of the Company, the Manager shall cause to be sent to each Person who was a Member at any time during the taxable year then ended:  (i) an annual financial statements [sic], prepared by the Company's independent accountants in accordance with standards issued by the American Institute of Certified Public Accountants; and (ii) a report summarizing the fees and other remuneration paid by the Company to any Member, the Manager, or any Affiliate in respect of the taxable year.  In addition, within seventy-five (75) days after the end of each taxable year of the Company, the Manager shall cause to be sent to each Person who was an Interest Holder at any time during the taxable year then ended, that tax information concerning the Company which is necessary for preparing the Interest Holder's income tax returns for that year.  At the request of any Member, and at the Member's expense, the Manager shall cause an audit of the Company's books and

2

records to be prepared by independent accountants for the period requested by the Member.

In September 2013, NLB, Cloud, Garner and two other companies affiliated with Cloud and Garner were sued by Craig Taylor, Inc. ("CTI"), a company with which these defendants had engaged in business dealings. CTI's demands included a money judgment against NLB, Cloud and Garner. CTI's 185-paragraph petition alleged that Cloud and Garner had engaged in various acts of corporate mismanagement, self-dealing, breaches of fiduciary duty, fraud and forgery.[2]

In May 2014, 11 members of NLB filed the first petition in the matter before us, which they captioned as a derivative action, the goal of which was to enforce NLB's right to investigate allegations of self-dealing and breach of fiduciary duty by Cloud and Garner.[3] This action was combined with a demand for injunctive relief. The defendants included NLB, Cloud and Garner. The plaintiffs asserted that they sought to enforce NLB's own right to examine the company's "financial and other records," an effort that had been frustrated by Cloud and Garner's refusal to make the records available to them. The plaintiffs asserted that they wished to examine NLB's records due to CTI's allegations of wrongdoing against Cloud and Garner, as well as a $6 million bad debt expense on NLB's 2013 financial statement.

The petition contained the following specific allegations pertaining to Cloud and Garner:

---

[2] The petition of the CTI lawsuit was attached to the plaintiffs' original petition in the instant case.

[3] The plaintiffs are: Sanctuary Capital, LLC; J. Bishop Johnston; W. Clinton Raspberry, Jr.; MSC Two, LLC; O.A. Cannon, Jr.; Nelson D. Abell, III; R. Stewart Ewing, Jr.; Carolyn W. Perry; Annette Williams Carroll; Molly Williams; and Clark M. Williams, III. They assert in the petition that they are a numerical majority of NLB's members.

18.

Under Louisiana law, the manager of a limited liability company is "deemed to stand in a fiduciary relationship to the limited liability company and its members and shall discharge his duties in good faith, with the diligence, care, judgment, and skill which an ordinary prudent person in a like position would exercise under similar circumstances." La. R.S. 12:1314.

19.

In order to protect the financial and legal interests of the Company and all members of the Company, the Company has a right to conduct an independent investigation (i.e., an investigation not controlled by Defendant Cloud or Defendant Garner) of the allegations of self-dealing or any other misconduct on the part of its managers that, if substantiated, would violate the fiduciary duties imposed upon the managers by La. R.S. 12:1314. In order to conduct any such independent investigation, the Company also has a right to obtain any and all financial and all other records of the Company that are necessary to conduct such an investigation.

"Pending receipt and review of the financial records of the Company or other relevant evidence," the plaintiffs reserved the right to assert additional claims against Cloud and Garner, "including, but not limited to, claims for monetary damages, attorney's fees, and other relief."

In response to the petition, NLB, Cloud and Garner each asserted an exception of prematurity. They cited the provisions of NLB's operating agreement requiring members of the LLC to mediate their disputes and, if mediation failed, to submit disputes to arbitration. The trial court granted the exceptions of prematurity and dismissed the plaintiffs' action.

In *Sanctuary Capital, LLC ex rel. N. Louisiana Bidco, LLC v. Cloud*, 49,766 (La. App. 2 Cir. 4/15/15), 163 So. 3d 890, *writs denied*, 15-0947, 15-0951 (La. 8/28/15), 176 So. 3d 404, 405, this court reversed that judgment. The court found that, "[a]lthough this appears to be a hybrid of a derivative action and an action by individual members, we conclude that the action

4

here is fundamentally a demand by members of the LLC against the company itself. In other words, the members are attempting to enforce their rights to see the company's records against the company, not against other members. Moreover, we believe that this dispute does not 'relat[e] to' the agreement in a sense that triggers the mediation/arbitration clause."

This court further held that the mediation/arbitration clause of the operating agreement was not triggered for two reasons. First, the dispute was "neither a dispute *between* members nor a true derivative action to enforce the company's rights. The plaintiff members are seeking to enforce their own rights against the company itself. For purposes of the mediation/arbitration clause, this is not a dispute *between* members." (Emphasis theirs.) Secondly, there was an absence of a dispute relating to the operating agreement because its provisions made it clear that members had the right to inspect the company's books and records. The matter was remanded for further proceedings.

NLB, Cloud and Garner then filed dilatory exceptions of improper use of summary proceedings due to the petition's request for a mandatory injunction, which required a trial on the merits. The exceptions were granted at a hearing on September 26, 2016, at which the trial court ruled a summary proceeding was not authorized and the case was to be converted to an ordinary proceeding. Judgment was signed October 11, 2016. At a hearing on February 2, 2017, the trial court ordered that an amended petition converting the case to an ordinary proceeding be filed within 15 days.

On February 15, 2017, the plaintiffs filed a first amending, supplemental and restated petition for breach of contract and damages. They incorporated the allegations in the original petition while including

5

additional matters. They reiterated that the original lawsuit was filed to protect their investment in NLB and investigate allegations of self-dealing and breach of fiduciary duties by Cloud and Garner, each of whom was named as a defendant in "his capacity as manager of [NLB] only." They added the following specific allegations pertaining to Cloud and Garner:

5.

Notwithstanding the clear provisions contained in Article VIII of NLB's Operating Agreement, Defendants have steadfastly refused to provide Plaintiffs with the requested information and since the filing of this lawsuit have filed multiple exceptions and objections precluding Plaintiffs from exercising their contractual right to review, inspect and examine NLB's books and records. Defendants, Cloud and Garner, in their capacities as managers of NLB, have intentionally breached and violated the clear and unequivocal provisions set forth in Article VIII of NLB's Operating Agreement.

6.

During the approximately three years since the original lawsuit was filed, Defendants have only provided Plaintiffs with sanitized annual audit reports and federal tax returns. Defendants, Cloud and Garner, in their capacities as managers of NLB, have breached their duties owed to Plaintiffs that is [sic] set forth in the clear and unequivocal provisions contained in the NLB operating agreement making available NLB's books and records for Plaintiffs to examine.

7.

Defendants, Cloud and Garner, in their capacities as managers of NLB, have acted in bad faith in objecting and refusing to turn over the Company's books and records to Plaintiffs resulting in unnecessary legal expenses incurred by NLB and damages to Plaintiffs as minority members of NLB.

8.

In 2008, when certain Plaintiffs were members of NLB's board of directors, they questioned NLB's managers, Cloud and Garner, concerning the underwriting process and loan covenants for related party transactions, i.e., loans made to Cloud, Garner and/or companies in which Cloud and/or Garner held an ownership interest. Instead of responding to the inquiries, Defendants, Cloud and/or Garner, in their capacities

as NLB managers, asserted they were under no obligation to account to the minority NLB members or respond to their inquiries.

9.

Plaintiffs show that once the complete books and records of NLB are produced for review, inspection and examination as required by the Company's operating agreement, Plaintiffs may have additional claims, demands and causes of action against Cloud and Garner, in their capacities as NLB managers, to include, but not limited to:

a) lending NLB funds to companies owned by Cloud, Garner and/or Cloud and/or Garner's family members that are not at arm's length or fair market value;

b) not requiring personal guarantees for loans made to companies owned by Cloud and/or Garner and/or Cloud and/or Garner's family members in accordance with the company's standard loan covenants;

c) making unsecured loans to companies owned by Cloud and/or Garner and/or Cloud and/or Garner's family members;

d) making loans to companies owned by Cloud and/or Garner and/or Cloud and/or Garner's family members on commercially unreasonable terms;

e) acquiring distressed NLB loans for the personal benefit of Cloud/Garner and/or Cloud and/or Garner's family members;

f) improperly writing off NLB loans in which Cloud, Garner and/or companies in which they held an ownership interest;

g) usurping business opportunities of NLB;

h) other acts as managers of NLB of self-dealing, breaches of fiduciary duties and mismanagement of the Company that may be shown through discovery and trial.

The plaintiffs reserved their right to file another petition after reviewing NLB's books and records to assert additional claims against Cloud and Garner, as set forth in the ninth paragraph. They also requested that they be awarded "all damages that are reasonable" and prayed "for all just [and] equitable relief" to which they were entitled.

In response, the defendants filed a variety of exceptions. Among them were exceptions of no cause of action by Cloud and Garner. All

7

exceptions were denied by the trial court on May 15, 2017. In ruling, the trial court stated:

> I will say now the Court is going to deny the exceptions, and I'll go through each one of them. But I will say that I think this turns, in the Court's mind, on the broader question of whether the plaintiffs consider the individuals in their managerial capacity as opposed to being required to sue them in their member capacity. And the Court finds that there is sufficient evidence at this point that at least they've stated a cause of action to be able to maintain that. Will it prevail? I don't know. But, the Court finds that there was, and I think that finding will spill over into the other issues. . . . And then I think the last grouping in the exceptions, procedural capacity, improper [cumulation] of actions, vagueness and no cause of action can be addressed in the same vein, that I do find that underneath a broad reading of [La. R.S.] 12:1320 that the claims made by the plaintiffs against the individuals, Cloud and Garner, are sufficient at this point to maintain this cause of action. However, you know, as discovery plays out, it could very well be re-raised if in fact that's what discovery reveals, that it's not what the plaintiff has purported to have happened.

Judgment was signed on May 30, 2017. Cloud, Garner and NLB sought review before this court. We denied their writ applications. *See Sanctuary Capital, LLC ex rel. N. Louisiana Bidco, LLC v. Cloud*, 51,799, 51,800, and 51,801 (La. App. 2 Cir. 9/28/17). The Louisiana Supreme Court likewise denied their writ applications to that court. *See Sanctuary Capital, LLC ex rel. N. Louisiana Bidco, LLC v. Cloud*, 17-1845, 17-1858, 17-1857 (La. 1/9/18), 231 So. 3d 650, 653.

In April 2018, Cloud, Garner and NLB answered the suit and alleged that the plaintiffs had been provided all records to which they were entitled under the NLB operating agreement and pled the affirmative defense of extinguishment. In August 2018, the trial court held a hearing on motions to compel filed against the defendants by the plaintiffs. The motions to compel against Cloud and Garner were denied in open court. In its subsequent

8

written reasons for denying the motion to compel against NLB, the trial court stated:

> Except for a separate, now settled, lawsuit attached to the initial petition where bad acts were alleged, there are no definitive allegations made against the Defendants herein, other than that requested documents have not been provided. To allow the production of these documents in discovery would essentially answer the questions to be resolved at [trial.] Should the Court allow Plaintiffs access to some and/or all of the requested documents following trial, the Plaintiffs would then be able to file additional claims against Defendants at that time should they have a good faith belief the requested documents support the relief they now feel they 'may' have. As a result of this ruling, the Court believes this matter should now be ripe for trial and directs counsel to obtain a trial date as soon as possible.

On November 30, 2018, the trial court signed an order setting the matter for bench trial on May 28, 2019. It was later reset to July 22, 2019.

In the meantime, on November 29, 2018, Garner filed another exception of no cause of action, in which he asserted that he should not be subjected to the risk and expense of a trial based upon the petitions which stated no definitive claims against him. He further alleged that the instant case was an action against NLB by members seeking documents, no claims were asserted against him, and arbitration would have been available if there had been any such allegations because it would be a dispute between members under the operating agreement. On January 17, 2019, Cloud also filed another exception of no cause of action in which he adopted and incorporated by reference portions of Garner's exception. The plaintiffs filed an opposition to the exceptions on February 4, 2019.

A hearing was held on February 22, 2019, at which the trial court granted the exceptions of no cause of action. The court acknowledged its previous denial of the exceptions but stated that it felt it now had more

9

information and a greater understanding of the issues.  In granting the exceptions, the court relied upon the discussions pertaining to La. R.S. 12:1320(D) in *Nunez v. Pinnacle Homes, L.L.C.*, 15-0087 (La. 10/14/15), 180 So. 3d 285, and *An Erny Girl, L.L.C. v. BCNO 4 L.L.C.*, 2018-0360 (La. App. 4 Cir. 9/26/18), 257 So. 3d 212.  Specifically, the court found that there were no allegations of fraud, breach of professional duty, or other negligent or wrongful acts by Cloud or Garner.  It noted that, if it was determined that the members should have been given the documents, this could be remedied at trial by requiring the LLC to do it and that the LLC could be cast with any damages.  Also, the court opined that, if the documents reflected "untoward" information, the plaintiffs could still pursue potential claims against the managers.  Judgment granting the exceptions and dismissing all claims against Garner and Cloud was signed March 7, 2019.

The plaintiffs appealed.

## NO CAUSE OF ACTION

The peremptory exception of no cause of action is set forth in La. C.C.P. art. 927(A)(5).  It tests the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition.  *Vince v. Metro Rediscount Co., Inc.*, 18-2056 (La. 2/25/19), 264 So. 3d 440; *Jackson v. City of New Orleans*, 12-2742 (La. 1/28/14), 144 So. 3d 876; *Port City Glass & Paint Inc. v. Brooks*, 52,534 (La. App. 2 Cir. 2/27/19), 266 So. 3d 516; *Pesnell v. Sessions*, 51,871 (La. App. 2 Cir. 2/28/18), 246 So. 3d 686.

The exception is triable on the face of the petition; and, for the purpose of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true.  *Fink v. Bryant*, 01-0987 (La.

10

11/28/01), 801 So. 2d 346; *Pesnell v. Sessions*, *supra*. No evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action. La. C.C.P. art. 931.

An exception of no cause of action should be granted only when it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief. If the petition states a cause of action on any ground or portion of the demand, the exception should generally be overruled. Every reasonable interpretation must be accorded the language used in the petition in favor of maintaining its sufficiency and affording the plaintiff the opportunity of presenting evidence at trial. *Badeaux v. Southwest Computer Bureau, Inc.*, 05-0612 (La. 3/17/06), 929 So. 2d 1211; *Stonecipher v. Caddo Par.*, 51,148 (La. App. 2 Cir. 4/7/17), 219 So. 3d 1187, *writ denied*, 17-0972 (La. 10/9/17), 227 So. 3d 830.

The burden of showing that the plaintiff has stated no cause of action is upon the exceptor. The public policy behind the burden is to afford the party his day in court to present his evidence. *City of New Orleans v. Board of Directors of La. State Museum*, 98-1170 (La. 3/2/99), 739 So. 2d 748; *Port City Glass & Paint Inc. v. Brooks*, *supra*; *Villareal v. 6494 Homes, LLC*, 48,302 (La. App. 2 Cir. 8/7/13), 121 So. 3d 1246.

An appellate court reviews a trial court's ruling on an exception of no cause of action *de novo* because the exception raises a question of law and the lower court's decision is based only on the sufficiency of the petition. *Fink v. Bryant*, *supra*; *Port City Glass & Paint Inc. v. Brooks*, *supra*.

A peremptory exception may be urged at any time. La. C.C.P. art. 928. And a party may re-urge a peremptory exception after it has been denied. *Landry v. Blaise, Inc.*, 2002-0822 (La. App. 4 Cir. 10/23/02), 829

11

So. 2d 661.  The overruling of a peremptory exception is merely an interlocutory order, and the court has the right, at any stage of the proceeding at which the objection was made, to set aside that decree and to sustain the exception, upon finding that it erred in overruling it.  *R.G. Claitor's Realty v. Juban*, 391 So. 2d 394 (La. 1980); *Louisiana State Bar Ass'n v. Carr & Assocs., Inc.*, 2008-2114 (La. App. 1 Cir. 5/8/09), 15 So. 3d 158, *writ denied*, 09-1627 (La. 10/30/09), 21 So. 3d 292.

### RELEVANT LAW PERTAINING TO LLCs

The law pertaining to LLCs is found in La. R.S. 12:1301 et seq.  An LLC is defined as "an entity that is an unincorporated association having one or more members that is organized and existing under this Chapter."  La. R.S. 12:1301(A)(10).  An LLC may have an operating agreement, which is an agreement of the members concerning the affairs of the LLC and the conduct of its business.  *See* La. R.S. 12:1301(A)(16).  If an LLC has no operating agreement, the default provisions of the Louisiana LLC Law should govern.  Susan Kalinka et al., 9 La. Civ. L. Treatise, Limited Liability Companies and Partnerships § 1:5 (4th ed. 2015).

The pertinent statues provide, in relevant part, as follows:

La. R.S. 12:1314. Duties of members and managers

A.  Subject to the provisions of R.S. 12:1315, a member, if management is reserved to the members, or manager, if management is vested in one or more managers pursuant to R.S. 12:1312:
(1)  Shall be deemed to stand in a fiduciary relationship to the limited liability company and its members and shall discharge his duties in good faith, with the diligence, care, judgment, and skill which an ordinary prudent person in a like position would exercise under similar circumstances. Nothing contained in this Section shall derogate from any indemnification authorized by R.S. 12:1315.
. . .

12

B.  Notwithstanding the provisions of Subsection A of this Section, a member or manager shall not be personally liable to the limited liability company or the members thereof for monetary damages unless the member or manager acted in a grossly negligent manner as defined in Subsection C of this Section, or engaged in conduct which demonstrates a greater disregard of the duty of care than gross negligence, including but not limited to intentional tortious conduct or intentional breach of his duty of loyalty.

C.  As used in this Section, "gross negligence" shall be defined as a reckless disregard of or a carelessness amounting to indifference to the best interests of the limited liability company or the members thereof.

. . .

La. R.S. 12:1315. Limitation of liability and indemnification of members and managers

A. Subject to Subsection B of this Section, the articles of organization or a written operating agreement may:

(1) Eliminate or limit the personal liability of a member or members, if management is reserved to the members, or a manager or managers, if management is vested in one or more managers pursuant to R.S. 12:1312, for monetary damages for breach of any duty provided for in R.S. 12:1314.

(2) Provide for indemnification of a member or members, or a manager or managers, for judgments, settlements, penalties, fines, or expenses incurred because he is or was a member or manager.

B. No provision permitted under Subsection A shall limit or eliminate the liability of a member or manager for the amount of a financial benefit received by a member or manager to which he is not entitled or for an intentional violation of a criminal law.

La. R.S. 12:1319.  Records and information

. . .

B. Unless otherwise provided in the articles of organization or an operating agreement, a member may do any of the following:

(1) At the member's own expense, inspect and copy any limited liability company record upon reasonable request during ordinary business hours.

(2) Obtain from time to time upon reasonable demand the following:

(a) True and complete information regarding the state of the business and financial condition of the limited liability company.

(b) Promptly after becoming available, a copy of the limited liability company's federal and state income tax returns for each year.

(c) Other information regarding the affairs of the limited liability company as is just and reasonable.

(3) Demand a formal accounting of the limited liability company's affairs whenever circumstances render it just and reasonable. [4]

La. R.S. 12:1320. Liability to third parties of members and managers

A. The liability of members, managers, employees, or agents, as such, of a limited liability company organized and existing under this Chapter shall at all times be determined solely and exclusively by the provisions of this Chapter.

B. Except as otherwise specifically set forth in this Chapter, no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company.

C. A member, manager, employee, or agent of a limited liability company is not a proper party to a proceeding by or against a limited liability company, except when the object is to enforce such a person's rights against or liability to the limited liability company.

D. Nothing in this Chapter shall be construed as being in derogation of any rights which any person may by law have against a member, manager, employee, or agent of a limited liability company because of any fraud practiced upon him, because of any breach of professional duty or other negligent or wrongful act by such person, or in derogation of any right which the limited liability company may have against any such person because of any fraud practiced upon it by him.

A claim for damages for the breach or bad faith breach of an

obligation owed under an operating agreement is essentially a claim for a

breach of fiduciary duty. *See e.g., Coleman v. Querbes Co. No. 1*, 51,159

---

[4] In *Sanctuary Capital, LLC ex rel. N. Louisiana Bidco, LLC v. Cloud*, 163 So. 3d at 895, this court found that NLB's operating agreement's "books and records" provision was broader than this statutory provision. The operating agreement applied the adjective "reasonable" only to the "times" when records could be inspected, whereas the statute required that the "request" for the records be "reasonable."

(La. App. 2 Cir. 2/15/17), 218 So. 3d 665; *Risk Mgmt. Servs., L.L.C. v. Moss*, 09-632 (La. App. 5 Cir. 4/13/10), 40 So. 3d 176, *writ denied*, 10-1103 (La. 9/3/10), 44 So. 3d 683.

## DISCUSSION

Cloud and Garner argued below that the allegations set forth in the plaintiffs' two petitions were insufficient to state a cause of action against them. They maintained that the absence of "definitive" allegations against them made it impossible for them to prepare to defend themselves at trial. They also asserted that, due to the lack of allegations against them, they had no way of determining the existence *vel non* of a basis for an exception of prematurity to permit the mediation/arbitration provided for under the operating agreement. The plaintiffs argued otherwise and maintained that the original ruling made below denying the exceptions of no cause of action was correct. The plaintiffs further contended that nothing had transpired since the original ruling to justify a different result.

In support of their argument, Cloud and Garner primarily rely upon *Ogea v. Merritt*, 13-1085 (La. 12/10/13), 130 So. 3d 888, *Nunez v. Pinnacle Homes, L.L.C.*, *supra*, and *An Erny Girl, L.L.C. v. BCNO 4 L.L.C.*, *supra*. However, all of these cases involve La. R.S. 12:1320, an article whose caption states that it addresses "[l]iability to third parties of members and managers."[5] (Emphasis ours.) Furthermore, the cited cases arose from legal disputes between LLCs and third parties with whom the companies engaged in business transactions. *Ogea* established the following factors, which were

_____

[5] Only La. R.S. 12:1320(C) has relevance here in that it provides that a manager can be a proper party in a suit to enforce the manager's liability to the limited liability company.

15

to be considered in determining whether a member could be held personally liable for his negligent or wrongful acts under La. R.S. 12:1320(D):

> 1) Whether a member's conduct could be fairly characterized as a traditionally recognized tort; 2) whether a member's conduct could be fairly characterized as a crime, for which a natural person, not a juridical person, could be held culpable; 3) whether the conduct at issue was required by, or was in furtherance of, a contract between the claimant and the LLC; and 4) whether the conduct at issue was done outside the member's capacity as a member.

The *Nunez* and *An Erny Girl* cases discussed and applied these factors.

There are no "third parties" in the instant case. Here we are dealing with a purely internal dispute over the members' right to inspect the LLC's financial records, an action explicitly permitted by the LLC's operating agreement, and now a claim for monetary damages.[6]

La. R.S. 12:1314(A) establishes that the managers have a fiduciary relationship to the limited liability company and its members and that they are required to discharge their duties in good faith. La. R.S. 12:1314(B)

---

[6] A discussion of enforcement of inspection rights is found in Glenn G. Morris and Wendell H. Holmes, 8 La. Civ. L. Treatise, Business Organizations § 44:21 (2d ed. 2017):

> Despite the uncertainties associated with the meaning of the LLC records inspection language, the risks to controlling LLC members of denying inspection rights to dissident members appears to be fairly small. The LLC statute provides no particular remedies in connection with inspection rights. In corporation law, in contrast, a shareholder is entitled to recover the litigation expenses he incurs in enforcing his inspection rights unless the corporation proves that it refused the inspection in good faith because it had a reasonable basis for doubt about the shareholder's right to inspect the records demanded.
>
> For LLCs that deny inspection rights for legitimate reasons, the lack of fee-shifting sanctions makes sense; it allows an LLC to test the meaning [sic] the inspection rights provision without the risk of doubling its litigation expenses. But, unfortunately, the same low risk exists for those LLCs that deny inspection rights for the wrong reasons. They too are allowed to litigate the issue, and to pay only their own expenses if they lose. The statute makes it likely, therefore, that dissident members of an LLC will be forced to resort to litigation to enforce their inspection rights, regardless of the propriety or impropriety of their inspection requests.

absolves managers of personal liability to the LLC or its members for monetary damages <u>unless</u> they acted in "a grossly negligent manner," which is defined as "a reckless disregard of or a carelessness amounting to indifference to the best interests of the limited liability company or the members thereof," or "engaged in conduct which demonstrates a greater disregard of the duty of care than gross negligence, including but not limited to intentional tortious conduct or intentional breach of his duty of loyalty."

La. R.S. 12:1315 provides that the operating agreement may eliminate or limit a manager's personal liability for monetary damages for breach of any duty provided for in La. R.S. 12:1314. Our review of NLB's operating agreement reveals the following provisions in Article IV, Management: Rights, Powers, and Duties.

D. Duties of Parties.

1.    The Manager shall not be personally liable, responsible, or accountable in damages or otherwise to the Company or to any Member for any action taken or any failure to act on behalf of the Company within the scope of the authority conferred on the Manager by this Agreement or by law, unless the action was taken or omission was made fraudulently or <u>in bad faith</u> or unless the action or omission constituted gross negligence. . . .

E. Liability and Indemnification.

1.    The Manager shall not be liable, responsible, or accountable, in damages or otherwise, to any Member or to the Company for any act performed by the Manager within the scope of the authority conferred on the Manager by this Agreement, except for fraud, gross negligence, or <u>an intentional breach of this Agreement</u>. [Emphasis added.]

The plaintiffs alleged in their original petition that suit was brought to investigate allegations of "self-dealing or any other misconduct" by Cloud and Garner, which, if substantiated, would violate the fiduciary duties imposed upon them as managers under La. R.S. 12:1314. In their first

17

amending, supplemental and restated petition, they further asserted that Cloud and Garner, as managers, "intentionally breached" the operating agreement's provisions pertaining to review of book and records; they "have acted in bad faith" in refusing to turn over the books and records to the plaintiffs; and their actions in this protracted litigation have resulted in unnecessary legal expenses for NLB and damages to the plaintiffs as minority members of NLB.

Based upon our *de novo* review, we find these allegations are sufficient to support a cause of action against Cloud and Garner under La. R.S. 12:1314 for violation of their fiduciary obligations. Furthermore, the allegations assert intentional breaches of the operating agreement and actions in bad faith. Under Article IV (D) and (E) of the operating agreement, quoted above, the managers may be subjected to liability for bad faith actions and intentional breaches. It does not appear that the lower court considered all the applicable law or the provisions in the operating agreement in reaching its decision. The cases pertaining to liability to third parties do not govern the situation before us.

Accordingly, we reverse the trial court judgment granting the exceptions of no cause of action.[7]

---

[7] Issues pertaining to the applicability of the mediation/arbitration provisions contained in the operating agreement are not before us in the current appeal. Our opinion in the prior appeal in this case was restricted to the allegations made in the original petition. The plaintiffs have since expanded their claims and are now seeking monetary damages against Cloud and Garner. These new claims may be subject to the mediation/arbitration provisions contained in the operating agreement. The defendants, if they deem it appropriate, should be afforded a reasonable opportunity to exercise any rights to enforce those mediation/arbitration provisions. The plaintiffs, of course, would have the right to argue otherwise. We express no opinion on how the trial court should rule upon such a matter.

## CONCLUSION

The trial court judgment granting the exceptions of no cause of action filed on behalf of Richard D. Cloud and James Randolph Garner is reversed. The matter is remanded to the trial court for further proceedings.

Costs of this appeal are assessed to the appellees, Richard D. Cloud and James Randolph Garner.

**REVERSED AND REMANDED.**